OCEAN ACCIDENT & GUARANTEE CO. et al. v.
INDUSTRIAL COMMISSION OF UTAH, et al.

No. 4528.    Decided April 26, 1927.    (256 P. 405.)

474

[1] *Anderson* v. *Last Chance Ranch Co.*, 63 Utah, 551, 228 P. 184.

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff, Atty. Gen.,* and *J. Robert Robinson, Asst. Atty. Gen.,* for defendants.

HANSEN. J.

This is a proceeding under the Workmen's Compensation Act for a review of an order of the Industrial Commission awarding compensation to the widow and two minor children of Richard Benjamin Jones, who was killed by lightning while engaged by Charles H. Gosling as receiver of the Ogden Realty & Investment Company, a corporation. The material facts, as shown by the evidence and as found by the Industrial Commission, are these:

The Ogden Realty & Investment Company, a corporation, is the owner of a tract of land consisting of 180 acres situated northwesterly from the Pioneer Power Station of the Utah Power & Light Company in Ogden City, Utah. Since the incorporation of said Ogden Realty & Investment Company in January, 1922, it has been engaged in excavating, cleaning, and marketing sand and gravel from a part of its tract of land. The sand and gravel were sold for cement construction work and from a few yards to 400 yards have been marketed per day by the company.

About 40 to 50 acres of the 180-acre tract owned by the company is devoted to the raising of alfalfa hay. All of the hay that is produced is fed to the horses owned and used by the company in its operations. The evidence does not disclose, and the commission did not find, the amount of the tract from which sand and gravel had been excavated, nor whether or not any of the land except that planted to alfalfa was used for the growing of agricultural crops.

The tract of land was purchased by the corporation for the sand and gravel it contained, and, so far as can be ascertained, the entire tract is valuable for that purpose. As excavations for sand and gravel are made the area growing alfalfa is diminished.

In excavating and cleaning sand and gravel the company owns and operates machinery, conveyors, belts, and other equipment. Just prior to and at the time Jones was killed, the company had in its employ 11 or 12 men in the gravel pit and 6 men were working in the hay and in constructing a hay derrick to be used in stacking the hay. At the time of the death of Jones, Charles H. Gosling was the duly appointed, qualified, and acting receiver of the Ogden Realty & Investment Company and as such receiver was, and had been for a few days, in charge of the company and its business.

Before Gosling was appointed receiver of the company, the deceased had cut and raked 5 acres of the alfalfa for the agreed price of $8 and the deceased had entered into a contract with the company to assist in cutting, raking, and stacking the alfalfa growing upon the remainder of the premises. Gosling, as receiver, through his superintendent, ratified and confirmed the contract with deceased whereby he was to assist in getting the alfalfa cut, raked, hauled, and stacked. On June 6, 7, and 8, and until 4 o'clock p. m. of June 9, the deceased with his team worked in cutting and raking hay and was engaged in raking hay when he was struck by lightning and instantly killed. Under the contract of employment deceased was receiving $6 per day for himself and team working eight hours per day and six days per week. Of the $6 per day $3.25 was allowed the driver and $2.75 for the team. The receiver testified that he intended to put Jones to work at the gravel pit when the hay was stacked, but there was no contract to this effect, and it does not appear whether Jones did or did not intend to work in the gravel pit after the hay was put up. Jones, at the time of his death, had done no work

either for the company or receiver except the work of cutting and raking the hay.

The Ocean Accident & Guarantee Company was insurance carrier. The insurance policy, among others, contains the following provisions: The premises or other workplaces of the employer is Twelfth street, Ogden, Weber county, Utah. The classification of operation is:

"Stone crushing—no quarrying—including drivers, chauffeurs and their helpers, and all employees engaged in the construction, repair and maintenance of all buildings, structures or equipment including the installation of machinery."

There are three attached indorsements to the policy, the last of which is designated "blanket coverage indorsement", and among its provisions are the following:

"If work is undertaken by the assured at the locations described in the policy which is not * * * otherwise specifically excluded in said policy, then the said declarations shall be deemed to be amended so as include such work, except the following classifications of work, which may be included under the policy only by special indorsement."

Then follows an enumeration of various kinds of work, but no mention is made of any agricultural pursuits.

The deceased left surviving him his widow and two minor children dependent on him for their support. Timely application was made to the Industrial Commission for compensation by the widow, Diana L. Jones, for and in behalf of herself and Virginia Jones and Olive Jones, minor daughters of deceased. The Ogden Realty & Investment Company, Charles H. Gosling, its receiver, and the Ocean Accident & Guarantee Company, the insurance carrier, here seek to have the award granted by the Industrial Commission annulled. The question presented necessitates the construction of Comp. Laws Utah 1917, §§ 3110 and 3111, as amended by chapter 63, Laws Utah 1919, which read, in part as follows:

3110. "The following shall constitute employers subject to the provisions of this title: (1) * * * (2) Every person, firm and

private corporation, including every public utility, that has in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, except agricultural laborers and domestic servants; provided, that employers who have in service less than three employees and employers of agricultural laborers and domestic servants shall have the right to come under the terms of this title by complying with the provisions thereof and all rules and regulations of the commission."

3111. "The terms 'employee,' 'workman,' and 'operative,' as used in this title shall be construed to mean: (1)  *  *  *  (2) Every person, except agricultural laborers and domestic servants in the service of any employer, as defined in subdivision 2 of section 3110, who employs three or more workmen or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, including aliens and also including minors who are legally permitted to work for hire under the laws of the state, but not including any person whose employment is but casual and is not in the usual course of trade, business or occupation of his employer."

Cutting and raking hay are essentially agricultural pursuits and persons employed to perform such work and paid by the day are agricultural laborers. Tested by the nature of the work the deceased was performing at the time he met his death, he was expressly excluded from the provisions of the Workmen's Compensation Act above quoted. The fact that deceased may have been kept in the employ of the receiver of the company after the work in the hay was completed cannot be said to affect the rights of his dependents to compensation. The act mentions employers who have in their service workmen or operatives other than agricultural laborers and domestic servants and does not refer to workmen whom the employer may have at some future time. The rights of the parties must be fixed and determined by the relation that actually existed and not from a state of facts that might or might not exist thereafter. To hold otherwise would lead to uncer-

tainty, speculation, and endless confusion. The fact, therefore, that Jones may have gone to work in the gravel pit after the hay was stacked can have no probative value in determining the ultimate questions here involved although it might be considered if it were contended that the work of Jones was merely casual, but as we understand it, no such contention is here made by those seeking to have the award annulled.

The deceased being an agricultural laborer at the time of his death, the award must be sustained, if sustained at all, by reason of the occupation of the employer. There is no doubt but that the principal trade, business, or occupation of the employer was that of marketing sand and gravel, but at the same time the company was also engaged to a substantial extent in agriculture. It is a matter of common knowledge of which we may take judicial notice that many agriculturists in this state devote their entire time to the cultivation of an area less than 40 to 50 acres. This is not a case where the employee temporarily digresses from his usual work, but a case where the employer is engaged in two occupations, one coming under the Workmen's Compensation Act, and one that does not come under the act unless the employer so elects. The cultivating, irrigating, cutting, raking, hauling, and stacking of hay requires almost constant attention and constitutes an occupation or business as much as that of marketing sand and gravel. The mere fact that the company's agricultural pursuit was a minor business or occupation does not change its status so long as the agricultural operations are of such a nature as to constitute a usual trade, business, or occupation.

It is contended on behalf of the applicants for compensation that the general business of the employer is the controlling feature in determining the nature of the employment and the right to compensation. It will be observed that the provisions of the Workmen's Compensation Act place domestic servants and agricultural laborers

in the same class. It seems clear that the Legislature intended that an employer of agricultural laborers, as well as an employer of domestic servants, does not come under the provisions of the act without he elects so to do so long as the employees are engaged exclusively in the one or the other of those vocations. It would be a strange doctrine to hold that domestic servants of a person whose occupation is subject to the provisions of the Workmen's Compensation Act are within its provisions while domestic servants of a person engaged in an agricultural pursuit are excluded therefrom. On principle we can see no good reason why an employer engaged in any of the occupations included within the act may not have employees engaged exclusively in agricultural work and be subject to the same law as the agriculturalist is subject to when he employs agricultural laborers, and we believe such was the clear intention of the Legislature as expressed in the Workmen's Compensation Act. Indeed, to hold otherwise may well subject the act to the constitutional objection of class legislation. A person whose general business is that of a manufacturer, merchant, banker, or other trade or occupation covered by the Workmen's Compensation Act, has the same right to also engage in agricultural pursuits, and while so engaged in an agricultural occupation should be, and we are of opinion is, subject to the same law as a person who makes agriculture his exclusive occupation or business. This principle is well established by numerous adjudicated cases, among which the reader is referred to the following: *Shafer* v. *Parke, Davis & Co.*, 192 Mich. 577, 159 N. W. 304; *Marietta* v. *Quayle*, 79 Ind. App. 9, 137 N. E. 61; *Dowery* v. *State*, 84 Ind. App. 37, 149 N. E. 922; *Seggebruch* v. *Ind. Comm.*, 288 Ill. 163, 123 N. E. 276; *Vaughan's Seed Store* v. *Simonini*, 275 Ill. 477, 114 N. E. 163, Ann. Cas. 1918B, 713; *Patrick Keaney's Case*, 217 Mass. 5, 104 N. E. 438.

Counsel for applicants rely in great part upon the principles announced by this court in the case of *Anderson* v.

*Last Chance Ranch Co.*, 63 Utah, 511, 228 P. 184. While the Anderson Case, supra, is not necessarily determinative of the case at bar, the reasoning of the court in that case is very helpful in arriving at the proper conclusion in this case. The facts and holding of the court in that case are sufficiently reflected in the syllabus, which is as follows:

"One employed as carpenter's helper by a ranch company, to assist in building a house on the ranch land for its manager, and requested by some one in authority to assist farm laborers in carrying groceries into the basement of the house, during which he was injured, *held* engaged at time of injury in agricultural labor, * * * and not entitled to compensation.

"A ranch company, building a house as a residence for its foreman or manager, was not engaged in the construction of buildings in the 'usual course of its business or occupation,' * * * so as to bring those employed on the house within the provisions of the act."

At page 556 of the opinion in the Utah report (228 P. 186) Mr. Justice Thurman, writing the opinion for the court, says:

"The authorities are uniform, as far as I am advised, in holding that the same employer can be engaged in two or more different kinds of business, trade, or occupations unconnected with one another, and all or some of them, nevertheless, be within the provisions of the Industrial Act.

"As a necessary corollary from what has been stated, the controlling question is: Was the defendant ranch company, in addition to its agricultural business, also engaged as a business, trade, or occupation in the construction of buildings, or was the construction of the building in question merely incidental to its farming business, so much so as to be rightly considered a part thereof? If the former, we are of opinion plaintiff comes within the Industrial Act, and is entitled to compensation; if the latter, he is excluded by the statute, and the order of the commission should be affirmed.

"The commission did not find, and under the evidence could not have found, that the defendant ranch company was also engaged in the business, trade, or occupation of constructing buildings."

It will be readily seen that, while in the Anderson Case, supra, there was no evidence from which the commission could have found that the ranch company was engaged in

the trade or occupation of constructing buildings, in this case the evidence is positive and without conflict that the Ogden Realty & Investment Company and its receiver were engaged in the business, trade, or occupation of farming, and that the deceased, at the time of his death and prior thereto, was exclusively engaged as an agricultural laborer. The principle announced in the Anderson Case, above quoted, is in accord with the uniform rule announced in other jurisdictions, in that a person or corporation may be engaged in two or more occupations, and, if an employee is engaged in an occupation excluded from the provisions of the Workmen's Compensation Act, neither he nor his dependents are entitled to an award in case of injury or death arising out of or in the course of his employment.

The mere fact that the hay raised upon the alfalfa land was fed to the horses used in operating the sand and gravel beds cannot be said to change or affect the rights of the parties herein. *Shafer* v. *Parke, Davis & Co.,* supra; *Vaughan's Seed Store* v. *Simonini,* supra.

It is further contended by the applicants for compensation that, even though it should be decided that the deceased and the company through its receiver were engaged in an agricultural operation at the time the deceased was killed, yet, under the provisions of the insurance policy, the company had elected to come under the provisions of the Workmen's Compensation Act. We are of the opinion that this contention is untenable. There is no evidence, except the policy itself, tending to show that the company made such an election. Nowhere is it made to appear that the company complied with, or attempted to comply with the terms of the Workmen's Compensation Act or the rules and regulations of the commission as is required in said act in order to bring its agricultural employees within the act. While the so-called blanket coverage indorsement does provide that, if work is undertaken by the assured at the locations described in the policy which is not otherwise specifically excluded in the policy, the policy may be deem-

ed to be amended so as to include such work, still there is nothing to indicate that either the insurance carrier or the assured ever had in mind any location except the places where the sand and gravel were being excavated and marketed. It would be going a great way in construing the terms of the insurance policy to hold that the parties to the contract of insurance intended that the policy should cover the farming operations which were in no way connected with the sand and gravel business except they both were conducted on the same 180 acres of land. The commission made no finding to the effect that the company had made any election to bring its agricultural employees under the Workmen's Compensation Act, nor that it had complied with the rules and regulations of the commission necessary to be complied with in order that the agricultural employees come under the provisions of said act. The law expressly excludes agricultural employers and employees from said act, unless and until the employer complies with the act, and the rules and regulations of the commission and the burden is on the applicants for compensation to show that decedent at the time of his death was within the provisions of said act.

We are of the opinion that both the Ogden Realty & Investment Company by its receiver and Richard Benjamin Jones at the time Jones was killed were engaged in an agricultural occupation, that there is no evidence and no finding that the Ogden Realty & Investment Company had elected to come under the provisions of the Workmen's Compensation Act as to its agricultural employees; and that, therefore, the Industrial Commission was without jurisdiction to grant the dependents of Jones any award of compensation.

It is therefore ordered that the award be, and the same is hereby, annulled.

THURMAN, C. J., CHERRY and STRAUP, JJ., and HANSON, District Judge, concur.

FRICK, J., did not participate.