# BALDWIN, STATE TREASURER v. ROBY

(No. 2090; September 18, 1939; 93 Pac. (2d) 940)

440

For the appellant, the cause was submitted upon the brief of *Ewing T. Kerr,* Attorney General; *Harold I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, all of Cheyenne.

442

The cause was submitted for the respondent upon the brief of *William W. Fell* and *Kerper and Kerper* of Cody.

BLUME, Justice.

Leslie Roby, hereinafter called the employee, or by his name, was employed by one Owen Hallam, near Powell, in Park County of this state, to help in baling hay, and for that purpose only. Hallam baled hay for various farmers in Park County commercially, on contract, receiving $2.50 per ton. The baler was operated by a tractor. On February 25, 1935, while Hallam was baling hay on the farm of one O. E. Bever, with the employee helping, the left eye of the latter became infected by the dust surrounding the baler. He consulted some physicians in the neighborhood, but, his eye not becoming better, he went to Billings, Montana, where, soon thereafter, it became necessary to take out his eye. On account of this, he presented his claim under the workmen's compensation act, and the court allowed him the sum of $1800. The state intervened in

the proceeding, claiming that the workman is not protected under the workmen's compensation act of this state, and the question whether he is or not is the sole question herein.

Section 124-105, R. S. 1931, excepts from the workmen's compensation act persons engaged in "ranch, farm, agricultural or horticultural labor and stock raising." Counsel for the employee claim that this provision is not in point; that in this case the employee was engaged in an industrial pursuit and not in agricultural labor, by reason of the fact that Hallam was not a farmer, but went from place to place in Park County, baling hay on contract, and that accordingly he was engaged in an industrial occupation. The statutes of this state provide that compensation under the workmen's compensation act is payable to persons injured in extra-hazardous employment. Section 124-102, R. S. 1931. It is further provided, by Sec. 124-104, that the extra-hazardous occupations apply to: "Factories * * * mills * * * and workshops where machinery is used. * * *" In Section 124-106, 107, these terms are defined, and counsel for the employee claim that these definitions are applicable herein. It is provided: "Factories mean any premises wherein power is used in manufacturing, making, altering, adapting, ornamenting, etc., any article for the purpose of trade or gain." A number of places are specifically mentioned, not including any premises on a farm. "Workshop" is defined as "any yard, plant, premises, room or place where power driven machinery is employed and manual labor is exercised by way of trade or grain or otherwise incidental to the process of making, altering, repairing * * * finishing or adapting for sale or otherwise any article or part of article, over which premises, room or place the employer of the person working therein has the right of access or control." A mill is defined as "any plant, premises, room or place where

machinery is used * * * changing, altering or repairing any article or commodity for sale or otherwise together with the the yards and premises which are a part of the plant, including elevators, warehouses, etc., or other work in the lumber industry."

It is apparent, of course, that an open place on a farm where hay is baled would not ordinarily be understood as coming within the definitions of factory, workshop or mill. The only possible way in which the contrary would be true under the statute is by holding that the legislature meant that any "place" or any "premises" where machinery driven by power is used in order to alter or adapt any article for gain or sale or otherwise should be included under the workmen's compensation act. It would seem, however, that if this had been the intention of the legislature it would hardly have been necessary to make such minute descriptions of factories, workshops and mills. In any event, even if it were possible to give these terms the broad meaning which counsel claim, every farmer who uses machinery at any place on his farm would be included under the act, requiring him to make payments as provided thereunder. Hence, these provisions cannot, in any event, be controlling herein, and it will be necessary to determine what the legislature meant when it enacted that an employee engaged in ranch, farm, agricultural or horticultural labor shall be excepted from the act. As already stated, counsel for Roby claim that he was not employed in agricultural or farm labor but was engaged in an industrial pursuit.

Counsel have not cited us to any case directly in point, but to some analagous cases in which it appears that the statute excepted from the compensation act farm or agricultural laborers and in which it was held that one employed by an operator of a machine like a thresher or corn shredder for various parties in the community for hire under contract is not a farm or

agricultural laborer, but is engaged in an industrial pursuit and hence is included within the protection of the workmen's compensation act. That has been held in New York, Indiana, Michigan and Colorado. White v. Rhodes, 178 App. Div. 237, 164 N. Y. S. 1023; Anderson v. Taylor Bros., 180 App. Div. 818, 168 N. Y. S. 287; In Re Boyer, 65 Ind. App. 408, 117 N. E. 507.; Dowry v. State, 84 Ind. App. 37, 149 N. E. 922; Hahn v. Grimm, 101 Ind. App. 74, 198 N. E. 93; Roush v. Hefflebower, 222 Mich. 664, 196 N. W. 185, 35 A. L. R. 196; Ind. Comm. v. Shadouen, 68 Colo. 69, 187 P. 926, 13 A. L. R. 952; Hoshiko v. Ind. Comm., 83 Colo. 556, 266 Pac. 1114; Hill v. Bombert (Colo.) 85 P. (2d) 719. In In Re Boyer and Rousher v. Hefflebower, supra, the court intimated that if the employee had been hired by the farmer and the work had been done directly for him, the holding would have been different.

A number of cases hold, under a like. statute, contrary to the rule announced in the foregoing cases. A note on the subject may be found in 7 A. L. R. 1296, 13 A. L. R. 955, 35 A. L. R. 204, 43 A. L. R. 954, and 107 A. L. R. 977. See specifically State v. District Court, 140 Minn. 398, 168 N. W. 130, L. R. A. 1918 F. 198; Keefover v. Vasey, 112 Nebr. 424, 199 N. W. 799, 35 A. L. R. 191; Bahlkow v. Preston, 60 S. D. 151, 244 N. W. 93; Jones v. Ind. Comm., 55 Utah 489, 187 Pac. 833; 19 N. C. C. A. 372. See also Cook v. Massey, 38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200. In the Minnesota case the court said, among other things:

"The important question is, what is the nature of the work? The work is done upon a farm. It is done upon farm crops. The purpose of growing the crops is to provide food for consumption or market. * * * The fact that more complicated mechanical devices are used * * * does not change the character of the work. Much farm work is done by the use of complicated machinery. There are tractor plows, self-binders and even combination harvester threshers by means of

which harvesting and threshing are done as one operation. These and other operations may be done for others by one who is able to own the more complicated and expensive machinery. But it is all, nevertheless, farm work and the employe who does such work is a 'farm laborer' within the meaning of the Compensation Act. Any other rule would be impractical and would lead to discriminations that could not be tolerated. This case illustrates it. Suppose the farmer's hired man who was helping plaintiff had also fallen. Both were doing the same work. Surely the hired man was then a 'farm laborer.' It cannot be said that one was a 'farm laborer' and the other was not."

In the Nebraska case the threshing machine in question was owned by a group of farmers for the purpose primarily of threshing their own grain. At the time when the employee in question was injured in that case, the threshing machine was operated on the farm of one Bradley, who then had no interest in the machine. However, it was held that the injured person did not come within the provision of the statute which excepted from the benefits of the workmen's compensation act employees of farm laborers. The court, mentioning the cases holding that an employee of one operating a machine for hire is engaged in an industrial pursuit, said that in these cases, "the status of the employee is conceived to be changed by the fact that the employer is not a farmer nor engaged in the general operation of a farm, but only in a single and particular part thereof. We are unable to perceive any logical basis for such a metamorphosis, especially when considering those statutes in which the excluding words are made specially applicable to farm laborers."

The reasoning of the first line of authorities above mentioned is not applicable in the case at bar. One of the reasons will be stated later. We must first call attention to the fact that our statute does not except from the workmen's compensation act "farm or agri-

cultural laborers," but employees engaged in agricultural or farm labor, a term somewhat broader than the former, or at least clearer. The Idaho statute excepts from the workmen's compensation act persons engaged in "agricultural pursuit," but the court, in the Idaho case above cited, does not make the distinction just mentioned. In that case an employee of a commercial thresher was held to be engaged in an agricultural pursuit, and we think, notwithstanding the contention of counsel for Roby to the contrary, that "agricultural labor" is equivalent to "Agricultural pursuit." We think that the distinction first above mentioned, namely between "farm or agricultural laborers" and "employees engaged in farm or agricultural labor" is not captious or too subtle. It was pointed out in the case of Hahn v. Grimm, supra, where it was held that one employed by an operator of a corn shredder for hire was not a farm laborer even though shredding of corn is an agricultural pursuit. The distinction was clearly stated in the case of Lowe v. Workmen's Compensation Bureau, 66 N. D. 246, 264 N. W. 837, 107 A. L. R. 973. In that state those employed in agriculture are excepted from the benefits of the workmen's compensation act, and it was held in the foregoing case that the employee of the owner of a threshing machine who was threshing grain under contract for others did not come within the Workmen's Compensation Act. The court said among other things:

"One may be employed in agriculture and yet not be a 'farmer' in the ordinary sense of the term, nor even a 'farm laborer' as the term is used in our lien laws. They are not synonymous terms. The term 'agriculture' is broader than either of the others. The expression 'employed in agriculture' refers to the type of work that is done rather than to the form of the contract for the work."

The court then, referring and quoting partially from the Minnesota case above cited, further states:

"In any event, it must be clear the employee in that case was employed in agriculture. If a farmer threshes his own grain and employs men for that purpose, these men are employed in agriculture. They are engaged in harvesting crops. The crops are not fully harvested until they are ready for the farmer's market. The fact that the farmer may thresh for a neighbor or engage in what is called 'commercial threshing' does not alter the work his employees are doing. They are harvesting crops even if doing it under special contract. Hence that the thresher in that case was what is known as a 'commercial thresher' or one doing the threshing under an independent contract is immaterial, all are employed in the business, profession, or pursuit known as agriculture, and the policy of the law is to exclude such from the benefits of the law."

The same court, after mentioning the Colorado, Indiana, Michigan and New York cases, further states:

"An examination of the statutes involved in these cases shows a much more limited range for the exception. The Wisconsin statute expressly excludes farm laborers; as do the Colorado, Indiana, and Michigan statutes. Almost invariably it is the 'farm laborer' who is excepted. But one may be employed in agriculture, and yet not be a 'farm laborer,' though the Iowa decision already cited makes little, if any, distinction. Employed in 'agriculture' is the term used in our statute. In the Colorado case cited it is shown clearly that the Colorado law excepts 'farm and ranch laborers' only, and the court distinguished the Iowa case (Sylcord v. Horn) by showing that in Iowa the exception covers those 'engaged in agricultural pursuits,' a much broader term, and thus the court accounts for the difference in the decisions."

The exception in this state is substantially like the exception in the statute of North Dakota, and we are unable to say that the reasoning of the foregoing case is unsound. Some kinds of labor, as, for instance, repair of machinery or buildings, are not inherently

agricultural, and may or may not be agricultural labor, depending on the circumstances. See note Ann. Cas. 1917 D. 12; 28 R. C. L. 719. In such case the nature of the particular work done is not the only criterion, and without deciding the point, it may be correct to say that then the employment as a whole must be considered. That rule, however, announced in a number of cases, has its limitations, and can have no application in cases under a statute like ours in which the nature of the work is purely or inherently agricultural, if we want to give the words of the statute their ordinary and natural meaning without distorting it. If a bush is a rosebush, it is such whether planted by A or by B. And if a statute provides that he who plants a rosebush shall not come within the scope of the workmen's compensation act, it would not matter whether the planter thereof were employed by A or by B. The reasoning is equally applicable when we substitute "doing agricultural labor" for planting a rosebush, if the labor is in fact just as inherently agricultural, as a rosebush is inherently a rosebush. The correctness of this reasoning is approved in the North Dakota case, supra. It is also approved in the Minnesota and Nebraska cases already cited. It is also approved in Sylcord v. Horn, 179 Iowa 936, 162 N. W. 249, 7 A. L. R. 1285. In that case Sylcord was employed by one Horn who was engaged in commercial corn shredding, and at the time of the injury of Sylcord was engaged in shredding corn for one Swaney, on the latter's farm. The Iowa statute excepted from the workmen's compensation act "farm or other labor engaged in agricultural pursuits." The exception accordingly was closely akin to the exception found in our statute. The court stated that it could scarcely be a debatable question as to whether Sylcord was engaged in an agricultural pursuit, and said further:

"There can be no doubt that shredding corn is a part

of carrying on a farm. Swaney (the farmer) could have employed defendant (the operator of the corn shredder) to plow a 40 acre field and defendant could have employed plaintiff (the employee) to assist him. The fact that defendant may have agreed to plow the entire field by contract would not change the character of the work, and both he and his assistant would still be engaged in farming operations."

The correctness of the foregoing reasoning is also clearly shown by what was stated by Mr. Justice Frick in the case of Jones v. Ind. Comm. of Utah, supra, under a statute which excepted agricultural laborers from the benefits of the workmen's compensation act. He stated:

"The statute excepts all 'agricultural laborers.' The exception includes all persons engaged in the pursuit of agriculture. If, therefore, one who is engaged in threshing grain which is produced upon our farms is engaged in agricultural work, he is not within the provisions of our Industrial Act. It is conceded by the Industrial Commission, and by all concerned in this proceeding, that in case a farmer threshes his own grain with his own threshing machine he and all others who are assisting him are engaged in agriculture, and are thus excepted from the act. The commission, however, held that where grain is threshed by farmers or others for toll or hire the owner of the machine and those he employs to help him are not engaged in agriculture. In other words, if A pitches bundles to a threshing machine which is owned and operated by a farmer in threshing his own grain, then A is engaged in agriculture, and does not come within the provisions of the act; but if he pitches bundles to the same machine when it is used for threshing grain for toll or hire for farmers who pay toll, then he is not engaged in agriculture, and comes within the provisions of the act respecting compensation. According to this view, it is not the nature of the work which determines one's calling, but that is determined by the fact that the work is done by a particular person and is compensated for in a particular manner. If, therefore, a farmer purchases a tractor and gang plows, and plows his own

fields therewith, he is engaged in agriculture, but if he uses the tractor and plows in plowing his neighbor's fields for a stipulated price per acre he is not engaged in agriculture. To so hold is to make a distinction where there is no difference, and attempt to classify a calling, the classification of which is purely arbitrary and without a proper reason or foundation."

See also the case of Hill v. Ind. Comm., 346 Ill. 342, 178 N. E. 905.

We think, accordingly, that, under a statute like ours, whether labor is done directly for a farmer or by an employee of one engaged in baling hay commercially is immaterial, and must be considered farm or agricultural labor if it is in fact such. And we shall proceed to determine the latter point. It was held in Mundell v. Swedlund (Idaho) 80 P. (2d) 13, that an employee of one who commercially grinds hay with a hammer mill, going from farm to farm, is not engaged in an agricultural pursuit, but comes within the protection of the workmen's compensation act. Such work was held to be similar to grinding grain in a mill. The case might deserve greater consideration herein, if it were not, apparently at least, based upon inconsistent reasoning. If grinding hay is not in fact an agricultural pursuit, that would seem to end the matter. But the court, judging from the cases cited, seems to base its conclusion mainly on the fact that the work was done for hire rather than by the farmer himself. The inconsistency appears, for instance, clearly when the court cites Hahn v. Grimm, supra, in which it was held that a person employed by a commercial corn shredder is not a farm laborer though he may be engaged in an agricultural pursuit. However, it is not necessary in this case to determine whether or not the ultimate conclusion of the Idaho court is correct. If it is, it is not decisive in the case at bar. The baling of hay is a process, perhaps intermediate between that of stacking hay and grinding hay. The Idaho court, it is true,

stated that "hay, as generally understood becomes a finished farm product when matured, cut, cured, gathered and stacked or housed." That probably was true formerly, but it is too much to ask that we should wholly overlook modern conditions and requirements. And that applies to the statement of counsel for Roby that formerly hay was baled in mills. We are asked to take judicial notice of that, which we cannot do. But even if it is true that cannot be decisive in the case, if it can reasonably be said that under modern conditions the work is agricultural in character. And we think it is. In the first place it may well be, on account of drouths, or for the better preservation of the hay than is possible in the stack, that a farmer may wish to bale his hay for his own future needs—in other words, "house" the hay in that manner within the meaning of the Idaho case just cited. Again he may want to market his hay, at a distance. It may be necessary for him to do so in order to live. And marketing hay is, we think, reasonably within the meaning of an agricultural pursuit. It was said in Bucher v. Amer. Fruit Growers Co., 107 Pa. Super. Ct. 399, at 404:

"Of course the storage and marketing of the crop raised whether it be fruit or grain, is just as much the work of agriculture as is the planting and cultivation thereof, or any other labor engaged in for the purpose of furthering, as a main or an incidental purpose, the cultivation of the ground or raising of crops."

And, in Lowe v. Workmen's Compensation Bureau, supra, the court stated that "The crops are not fully harvested until they are ready for the farmer's market." A more ready market may be found for hay which is baled. It is said in Volume 4, p. 2559, of the Book of Rural Life, an encyclopaedia, that "where hay is to be sold on the market, it must be baled in order to save space in storing and make it easier to handle." So it is said in Farmer's Bulletin 339, of the U. S.

Department of Agriculture, at page 25, that: "If hay is to be transported any considerable distance it is usually baled." And if that is true, there is hardly any reason for holding that baling hay is not an agricultural pursuit, as much so as is the baling of cotton. And we find, in jurisdictions where the specific point has been mentioned, that it has been so treated, namely, in Wisconsin, Washington, and California—the only three states, so far as we have found. In Powell v. Ind. Comm., 193 Wis. 38, 213 N. W. 651, the employee was specifically hired for the purpose of assisting the farmer in baling his hay on his farm, and the court, perhaps incidentally, stated that the employee, "during the few days of his employment with Powell was engaged in purely farm labor, and the latter, during that time, used his baling machine to bale his own hay." In Barney v. Anderson, 116 Wash. 352, 199 Pac. 452, the employer of farm labor was sued for damages sustained by negligence. He contended that the injury was compensable under the compensation act of that state—which, by the way, is similar to our own—and the court held that such contention was not well founded. Thus the point was directly involved. In California, the Industrial Commission had passed upon the point at least three different times, under facts similar to those in the case at bar, namely, in Morris v. Speers, 1 Dec. of Ind. Acc. Comm., p. 317; Vincent v. Louis, 2 Dec. I. A. Comm. 168; Neinmeyer v. Volger, 2 Dec. I. A. Comm. 335. The gist of these decisions may be seen from the syllabus in the first of these cases, which is as follows:

"Where an employer owns a hay press which he moves from farm to farm baling hay on contract for the owners of said farms, and his employee is injured while working on the hay press on a farm of a person for whom hay is being baled on contract, such employee is engaged in farm labor at the time of his injury and

his employer is not liable under the Workmen's Compensation, Insurance and Safety Act."

Be that as it may. Other factors to be considered herein make it clear as to what the decision herein must necessarily be. We pointed out in Lamont v. Intermountain Realty Co., 48 Wyo. 56, 41 P. (2d) 497, that the fund from which compensation is paid is managed by the state, and is derived from certain employers who pay into the fund certain amounts equal to a percentage of the earnings paid the employees during the preceding month. It is important that every employer whose employees are protected under the compensation laws is brought within the law and is compelled to pay the proper amount. It is at least ideally just to all employers and employees alike, though not controlling—and the ideal will probably never be reached under our statute—that each particular occupation coming within the scope of the law should provide the money necessary to be paid out in connection with that particular occupation. That should be taken into consideration in a case in which there is doubt as to the meaning of the legislature. Counsel for Roby state that but little hay is baled in this state and that we should take judicial notice thereof. We are not certain that we should take such judicial notice. It is often better, rather than to ask this court to take judicial notice, to supply us with the facts in the case—as insisted upon by the so-called realistic school of legal philosophy—so that we may decide cases with no fact having any bearing thereon left unconsidered. However, if we accept counsel's statement as correct—and a few facts in the record indicate such correctness—we may ask whether it is likely, in view of our law under which the state manages the compensation fund, that the legislature would have included employees of hay balers in the workmen's compensation law? Hallam, the employer, baled hay

all over the country around Powell, and perhaps he was the only one operating a hay baler in that county or in the so-called Basin district. He employed seven men, it appears, but only in the winter season. He attempted, as shown by the record, to come within the compensation laws, by remitting to the State Treasurer of this state after the accident herein, the sum of $7.71, which was, presumably, the proper per centage of his payroll during one month. If we figure four months as the winter season, the total amount paid in by him would be the sum of $30.00 per annum, so that it would take him sixty years to pay into the fund sufficient to equal the amount awarded in this case. And if it is correct, as counsel for Roby state, that but little hay is baled in this state, the amount paid in by all hay balers therein would probably be insignificant, making it unlikely, we think, to induce the legislature to include the labor here involved within the workmen's compensation law, unless farmers generally were included.

And other facts must be considered herein. On July 14, 1919, the attorney general of this state addressed a letter, in reply to an inquiry, to the State Treasurer of the State, who superintends the administration of the workmen's compensation fund. It is stated therein:

"Dear Sir: Replying to your letter of the 12th inst., will say that in my opinion threshers and those engaged in threshing operations are not subject to the provisions of the workmen's compensation act."

The letter is broad in terms, and doubtless was meant to refer to employees of commercial threshers as well as employees of farmers. The state treasurer acquiesced in the foregoing opinion, as will be seen later. Here we have a practical construction by two departments of the state. The legislature did not amend the law on the point here involved, and we must assume that the legislature acquiesced in the construction so

made. Lamont v. Intermountain Realty Co., supra. The foregoing construction and legislative acquiescence are important herein. 59 C. J. 1025; Equitable Life Ass'n. v. Thulemeyer, 49 Wyo. 63, 94; 52 P. (2d) 1223. And that is particularly true in view of the fact that the state has undertaken to collect the money out of which compensation is paid. The opinion of the attorney general is directly opposed to the holding of the New York, Indiana, Michigan and Colorado cases above cited, and these cases, accordingly, particularly in view of the legislative acquiescence in that holding, are no authority in this case.

One further fact. The workmen's compensation act was passed in 1915. We have before us the printed publications of the department which administers the compensation fund. We take judicial notice of the contents thereof. Bunten v. Rock Springs Grazing Ass'n., 29 Wyo. 461, 489, 215 Pac. 244. We find in these reports, commencing with 1916, a detailed account of all the industries which have contributed to the workmen's compensation fund. Agriculture, or anything bordering thereon, is not included within the lists. In other words, the department which has control of the fund, has given a practical, contemporaneous construction to the statute excepting employees engaged in farm and agricultural labor, in line with the construction of the attorney general, but broader in scope. The legislature of the state, and the employers of labor generally therein, must have known of that construction, and must have acquiesced therein, or the law would have been amended, so that employers of hay balers, and others similarly situated, could have been compelled to pay money into the compensation fund with which to meet the necessary outlay resulting from accidents. The meaning of the exception under our statute here under consideration is accordingly too clear, even under the rule of liberal construction,

to permit us to hold that the employee in this case comes within the workmen's compensation act. We, of course, sympathize with his misfortune, but relief, if any, in similar cases, must come from the legislature. We cannot usurp its function. The judgment of the trial court is, accordingly, reversed, with direction to set the award herein aside.

*Reversed, with Direction.*

RINER, Ch. J., and KIMBALL, J., concur.