304 P.2d 1092

**Alfred J. HUBBLE, Employee-Claimant-Respondent,**

v.

**Alex PERRAULT, Non-insured Subcontractor, and Smith's Frozen Foods of Idaho, Inc., Prime Contractor, Employers,**

and

**Travelers Indemnity Company, Surety, Defendants-Appellants.**

No. 8473.

Supreme Court of Idaho.

Dec. 21, 1956.

Paul C. Keeton, Lewiston, for respondent.

Cox, Ware & Stellmon, Lewiston, for appellants.

450

PORTER, Justice.

Appellant, Smith's Frozen Foods of Idaho, Inc., hereinafter referred to as the Company, operates a processing plant in Lewiston, for the freezing and canning of green peas. During the season of 1955, it purchased the peas raised on approximately 4,800 acres of land for processing in its plant. In addition, it leased approximately 400 acres of land upon which it raised peas for ultimate processing in its plant. Among the lands leased was the 174-acre farm of Ellis Gibbs, located in Nez Perce County.

The peas raised by the Company on its leased lands were threshed by it by means of stationary threshing machines commonly called viners. The Company owned these viners which were also used by other pea growers in threshing crops. The farmers, generally selling peas to the Company, did not own viners.

The pea vines are hauled from the field to the stationary viners and are there pitched into the threshing machines by laborers called pitchers. The Company entered into a contract for the season of 1955 with the defendant, Alex Perrault, a labor contractor, for the furnishing of these pitchers for the threshing of its crops; and such laborers were thereafter furnished and paid by the labor contractor.

The claimant was employed on July 18, 1955, by Alex Perrault at Spokane, Washington, taken to the Gibbs farm in Nez Perce County and put to work on July 19 at a stationary viner as a pitcher. While so engaged claimant was struck by a truck and seriously injured. He thereafter duly filed claim with the Industrial Accident Board for compensation under the Workmen's Compensation Law. A hearing was had on such claim; at which hearing defendant, Alex Perrault, did not appear. The Industrial Accident Board made an award in favor of claimant and against all three of the defendants. From such award, the appellants, Smith's Frozen Foods of

Idaho, Inc., and Travelers Indemnity Company, have appealed to this court.

The independent contractor, Alex Perrault, did not carry workmen's compensation insurance on the laborers supplied by him including claimant. It therefore must be conceded that under the provisions of Section 72–811, I.C., the liability or non-liability of the Company for compensation is to be determined as if the claimant had been working directly for the Company.

The material part of Section 72–105a, I.C., of the Workmen's Compensation Law, reads as follows:

"None of the provisions of this act shall apply to the following employments, unless coverage thereof is elected as provided in section 72–105b:

"1. Agricultural pursuits."

The Company had not filed an election placing its employees engaged in agricultural pursuits under the coverage of the Workmen's Compensation Law.

In its award, the Industrial Accident Board states:

"There is little, if any, dispute as to the material facts. The main issue is one of law. The defense against liability is that the employment out of which claimant's work injury arose was an agricultural pursuit. The theory of claimant is that the employment, though commonly classified as agricultural, was in this case, incidental to the proprietor's main business of processing, freezing and canning food products, and more particularly, green peas."

The Board held that "in the area of its principal place of business at Lewiston, Idaho, it (the Company) has pursued as an integral part of its processing the growing and harvesting of the peas." Upon such finding the Board ruled that the employment in which claimant was engaged at the time of his injury was not an agricultural pursuit and as such exempt from the provisions of the Workmen's Compensation Law, and the Board accordingly made an award to claimant.

It is settled in this state that threshing of farm crops is an agricultural pursuit within the meaning of the Workmen's Compensation Law and this is not disputed by respondent. Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200; Mundell v. Swedlund, 59 Idaho 29, 80 P.2d 13; Big Wood Canal Co. v. Unemployment Compensation Div., 61 Idaho 247, 100 P.2d 49.

In order to sustain the finding of the Board that claimant was not engaged in an agricultural pursuit at the time of the accident, respondent urges that the controlling factor in determining whether an employee is engaged in an agricultural pursuit within the meaning of the Workmen's Compensation Act, is the occupation or pursuit of the employer considered as a whole, rather than the immediate task the

452

worker is doing at the time of the accident. In support of this statement, respondent cites the four Idaho cases of: Reed v. Russell, 67 Idaho 84, 172 P.2d 853; Mundell v. Swedlund, supra; Mulanix v. Falen, 64 Idaho 293, 130 P.2d 866; and Blackburn v. Olson, 69 Idaho 428, 207 P.2d 1160.

We quote from Mundell v. Swedlund, 59 Idaho 29, at page 36, 80 P.2d 13, at page 16, as follows:

"Peterson v. Farmers' State Bank of Eyota, 180 Minn. 40, 230 N.W. 124, illustrates the rule that the occupation or pursuit as a whole is the controlling factor, in determining whether an employee is engaged as a farm laborer or in an agricultural pursuit, rather than the immediate task being performed or the place of performance of such task:

" 'A workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged happens to be what is ordinary considered farm labor. The employee of an implement dealer does not become a farm laborer while engaged in correcting the behavior of a self-binder in the grain field of the owner, a farmer and customer of the dealer. Nor would the employee of a well digger become a farm laborer while stabling horses used on the drilling outfit. But a farmer's hired man would not cease

to be a farm laborer while adjusting harvesting machinery or stabling the horses of a contractor drilling a well on the place. * * * Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to to determine whether he is a farm laborer.' "

In Reed v. Russell, 67 Idaho 84, at page 88, 172 P.2d 853, at page 854, it is said:

"Where the employer is engaged in more than one occupation or business, one covered by workmen's compensation insurance, the other not, the rule as laid down in Dorrell v. Norida Land & Timber Co., 53 Idaho 793, at page 800, 27 P.2d 960, is to the effect that it is the regular or principal employment which governs the status of the employee."

Mulanix v. Falen, supra, is authority for the rule that the same work done under certain conditions and under certain circumstances may be agricultural, and under other conditions and circumstances may not. Blackburn v. Olson, supra, does not appear to have any bearing on the question at issue.

Cases cited from other jurisdictions are not too helpful as they are decided under differing statutes and apply varying tests to determine whether the employment -is or is not agricultural.

■ We conceive the rule in this jurisdiction to be that the general character of the work for which the employee was hired or is required to perform is the test of whether the labor was performed in a covered employment or in an exempt employment. Where the employee is a general employee engaged in the general business of his employer, then the principal business of the employer, whether it be a covered occupation or an exempt occupation, governs the nature of the employment of the employee. Where the employer is principally engaged in a covered occupation, the general employee is covered although he was incidentally engaged in an exempt occupation at the time of the accident. Likewise, if the principal occupation of the employer is exempt, the employee is not covered although at the time of the accident he was engaged in performing services in a covered occupation.

■ On the other hand, where the employer is engaged in both a covered occupation and an exempt occupation, a special employee employed to work exclusively in the covered occupation is covered, and likewise an employee hired to work exclusively in an exempt occupation is not covered, regardless of which occupation is the principal one of the employer.

In this case, the claimant was hired to perform exclusively agricultural labor in an agricultural pursuit, and was engaged in such pursuit at the time of the accident.

■ The Board was in error in finding that the raising of the pea crops on the leased lands was an integral part of the processing business of the Company. The Company was engaged in two distinct occupations. Its major occupation was that of a processor and its minor though substantial occupation was raising agricultural crops.

In Carstens Packing Company v. Industrial Accident Board, 63 Idaho 613, 123 P. 2d 1001, the Carstens Packing Company was engaged generally in the meat packing business in the State of Washington. It owned and operated lots for feeding and fattening livestock in Idaho, for processing in its meat packing business. This court held that laborers employed in such feed lots were engaged in agricultural employment.

We quote from Ocean Accident & Guarantee Co. v. Industrial Commission, 69 Utah 473, 256 P. 405, at pages 407–408:

"The deceased being an agricultural laborer at the time of his death, the award must be sustained, if sustained at all, by reason of the occupation of the employer. There is no doubt but that the principal trade, business, or occupation of the employer was that of marketing sand and gravel, but at the same time the company was also engaged to a substantial extent in agriculture. It is a matter of common knowledge of which we may take ju-

dicial notice that many agriculturists in this state devote their entire time to the cultivation of an area less than 40 to 50 acres. This is not a case where the employee temporarily digresses from his usual work, but a case where the employer is engaged in two occupations, one coming under the Workmen's Compensation Act and one that does not come under the act unless the employer so elects. The cultivating, irrigating, cutting, raking, hauling, and stacking of hay requires almost constant attention and constitutes an occupation or business as much as that of marketing sand and gravel. The mere fact that the company's agricultural pursuit was a minor business or occupation does not change its status so long as the agricultural operations are of such a nature as to constitute a usual trade, business, or occupation.

"It is contended on behalf of the applicants for compensation that the general business of the employer is the controlling feature in determining the nature of the employment and the right to compensation. * * * A person whose general business is that of a manufacturer, merchant, banker, or other trade or occupation covered by the Workmen's Compensation Act, has the same right to also engage in agricultural pursuits, and while so engaged in an agricultural occupation should be, and we are of opinion is, subject to the same law as a person who makes agriculture his exclusive occupation or business. This principle is well established by numerous adjudicated cases, * * *."

See also, Melendez v. Johns, 51 Ariz. 331, 76 P.2d 1163; In re Roby, 54 Wyo. 439, 93 P.2d 940.

It has been suggested that the actual threshing of the peas was an integral part of the processing business of the Company. While it is true that the Company owns the viners, there is nothing in the record to indicate that the threshing of the green peas is not done by the growers or that the growers part with title to the peas before threshing or do not pay the expenses of such threshing. Threshing is recognized as one of the necessary steps in harvesting farm crops and in preparing a finished farm product ready for the market. Cook v. Massey, supra; Big Wood Canal Co. v. Unemployment Compensation Div., supra; Mundell v. Swedlund, supra; Batt v. Unemployment Compensation Div., 63 Idaho 572, 123 P.2d 1004, 139 A.L.R. 1157; Chester B. Brown Co. v. Employment Security Agency, 78 Idaho 166, 299 P.2d 487. The record does not support the contention that the threshing of green peas is part of the commercial operation of canning or freezing the peas.

In threshing the peas at the time of respondent's injury, the Company was still engaged in the agricultural pursuit of producing and preparing for market an agricultural crop and the respondent was engaged in non-covered agricultural employment under the provisions of the Workmen's Compensation Law.

The award of the Industrial Accident Board will be reversed and the cause remanded with directions to enter an order denying an award to respondent. Costs to appellants.

TAYLOR, C. J., and SMITH, J., concur.

ANDERSON, J., dissented before his death.

CRAMER, District Judge (dissenting).

In this case Smith's Frozen Foods has engaged in both covered and exempt employment under the Workmen's Compensation Act. No clear-cut divided line in its operations is apparent. No question can arise as to the fact that in the planting, growing and cutting the pea vines upon lands leased by it the Company is engaging in an agricultural pursuit, nor can it be seriously contended that their principal business or pursuit is not the freezing and canning of green peas.

It has been held that the term "agricultural pursuit" may include every process and step taken and necessary to the completion of a finished farm product. Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200.

I have no argument with this holding so far as ordinary farm products are concerned. However, in the frozen food industry the processor goes into the fields with his equipment and takes possession of the crop in a manner entirely different than is generally practiced by the ordinary processor of other farm products. It is essential that the product in this case, green peas, must be of a certain degree of maturity and condition, and must be rapidly processed once they are removed from the ground. From the time the vines are cut until the peas are frozen speed is an essential characteristic of the process. Of this practice we may take judicial notice in a general way. Cook v. Massey, supra.

Ordinarily when crops such as green peas are produced for market the grower takes them from the vines and delivers them to the market in pods. In order to produce properly frozen food it is necessary that peas be handled with such particular care that the delivery of the peas in pods to the freezing plant may not result in an inferior product, one which would not lend itself to providing the quality of unbruised peas for efficient freezing: In the final analysis the grower is not concerned with the handling of the peas after he has delivered the product to the point

required by the processor. In practical effect what the processor is doing is extending his processing lines as close as possible, both in point of time and distance, to the severance of the farm product from the ground. There can be no analogy between green peas and a staple article such as grains and other farm products that are not subject to deterioration by delay in processing. Had the vines been taken by the grower to the processing plant and there unloaded I doubt that it would be seriously contended that the subsequent handling of the crop would constitute an agricultural pursuit. The operation is not changed by the processor going closer to the grower to conduct the first step of its processing.

According to the testimony the grower cuts the pea vines and puts them in windrows. At that point the processor takes over its operations. The pea vines are picked up off the ground, loaded into trucks contracted for by the processor and under its complete control. The trucks take the vines and dump them in front of the viner. The cost of the delivery from the windrows to the viner is charged to the grower. The operation after the vines were put into windrows was the same on lands where Smith's did not grow the peas as where they did.

After the vines are dumped in front of the viners another group of employees contracted for by the processor and under its control pitches the pea vines into the viners and carries away the boxes of peas and changes the lugs for the peas to run into. A crew of two men manned each viner, one pitching and one carrying away the peas. They alternated in their work. This was the particular employment engaged in by the claimant.

The handling of the peas from the time they left the windrows until the peas were finally processed was all an integral part of the processing rather than the raising and harvesting of the peas.

I agree that the Board was in error in finding that the raising of crops on the leased land was an integral part of the processing business of the Company. However I cannot agree that the podding of the peas by the viner was an agricultural pursuit by reason of its analogy to the harvesting and threshing of small grains. So far as the grower is concerned a finished product was delivered when the peas and vines were placed in windrows.

When the peas have been separated from the vines in the viners the operation of taking the peas away from the viners cannot be considered any part of the raising or harvesting of the peas. The peas running into the lugs from the viners are most certainly a finished farm product.

The Board found that claimant was lifting a lug of fresh peas out of the viner when the injury occurred. It is true that

there was testimony that claimant was employed to pitch vines, but other than the claimant's testimony there was no detailed explanation of his actual work. He testified that he thought at the time he was hurt he was carrying a lug of peas from the viner. Since there is substantial evidence to support the Board's finding it must be accepted as a fact on appeal.

The award of the Board should be affirmed.