Points Decided.

(November 9, 1923.)

## NORA A. COOK, Respondent, v. J. C. MASSEY, Appellant.

[220 Pac. 1088.]

APPEALS—STATUTES—RETROSPECTIVE EFFECT — WORKMEN'S COMPENSA·
TION ACT — CONSTRUCTION OF STATUTES — LEGISLATIVE INTENT —
THRESHING AS AGRICULTURAL PURSUIT—DUE PROCESS OF LAW IN
PROCEEDINGS BEFORE INDUSTRIAL ACCIDENT BOARD—NO PRESUMP-
TIONS UPON DIRECT ATTACK.

1. Unless a contrary intention clearly appears therein, a statute
will not be given retrospective effect.

2. Sec. 6270A, chap. 217 (Sess. Laws 1921, p. 479), shorten-
ing the time of appeal, does not apply where the judgment
appealed from was entered before the act became effective.

3. In construing a statute, words will be given their common
and ordinarily understood meaning.

4. In ascertaining legislative intent, all statutes on the same
subject matter may be considered.

5. The operation of a commercial· threshing-machine outfit is
an agricultural pursuit under the workmen's compensation law.
(C. S., sec. 6216.)

6. The Industrial Accident Board, being a body exercising
special judicial functions in its determination of issues between
contestants, and indirectly imposing a pecuniary liability upon
the loser, must pursue the same general conduct that a court
would exercise in safeguarding the fundamental, constitutional
rights of the citizen, which cannot be abridged except after due
notice and a fair and impartial hearing.

7. The validity of an award of the Industrial Accident Board
and of a judgment based thereon must be affirmatively shown in
case of direct attack upon such award and judgment, and no
presumptions in favor of jurisdiction or due process can be
indulged.

Publisher's Note.

2. Statute changing time allowed for appeal or writ of error as
affecting pending action, see note in 51 L. R. A., N. S., 760.

5. Applicability of compensation acts to employees engaged in
farming, see notes in Ann. Cas. 1917D, 12; 7 A. L. R. 1296; 13
A. L. R. 955.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Appeal from an award made by the Industrial Accident Board of the state of Idaho and affirmed by the district court. Judgment *vacated* and proceeding *dismissed.*

Bothwell & Chapman and J. H. Sherfey, for Appellant.

The deceased, William A. Cook, at the time of the accident was engaged in an "agricultural pursuit," and was, therefore, exempted from the provisions and operation of the workmen's compensation law. (C. S., sec. 6215; *Dillard v. Webb,* 55 Ala. 468; 1 Words & Phrases (Old Series), 286; 2 Cyc. 56; *Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895; *Simons v. Lovell,* 54 Tenn. 510; *Lahn & Co. v. Carr,* 120 La. 797, 45 So. 707; *Laporte v. Libby,* 114 La. 570, 38 So. 457; *Eckman v. Poor,* 38 Colo. 200, 87 Pac. 1088; *Stemmer v. Insurance Co.,* 33 Or. 65, 49 Pac. 588, 53 Pac. 498; *Estate of Klemp,* 119 Cal. 41, 63 Am. St. 69, 50 Pac. 1062; *Spence v. Smith,* 121 Cal. 536, 66 Am. St. 62, 53 Pac. 653; *Vincent v. Taylor Bros.,* 180 App. Div. 818, 168 N. Y. Supp. 287; *Jones v. Industrial Com.,* 55 Utah, 489, 187 Pac. 833.)

"While it is the intent of the compensation act to adjust controversy by concise and summary proceedings, unhampered by technical form, yet the elementary and fundamental principles of judicial trial must be observed, and it is not the intent of the act to throw aside all safeguards by which judicial investigations are recognized as best protected." (*Reck v. Whittleberger,* 181 Mich. 463, Ann. Cas. 1917C, 771, 148 N. W. 247; *Pacific Coast Casualty Co. v. Pillsbury,* 171 Cal. 53, 151 Pac. 658; *Heileman Brewing Co. v. Industrial Acc. Com.,* 161 Wis. 46, 152 N. W. 446; *Buckley's Case,* 218 Mass. 354, Ann. Cas. 1916B, 474, 105 N. E. 979.)

"No acts of the legislature shall be construed to be retroactive or retrospective unless the intention on the part of the legislature is clearly expressed." (3 C. J. 1042; *Peavy*

*v. McCombs,* 26 Ida. 143, 140 Pac. 965; *In re Frees' Est.,* 187 Cal. 150, 201 Pac. 112; C. S., sec. 9443.)

"As a general rule, the right of appeal is governed by the statute in force when the final judgment is rendered." (*Pignaz v. Burnett,* 119 Cal. 157, 51 Pac. 48; *Jackman v. Atchison T. & S. F. R. Co.,* 22 N. M. 422, 163 Pac. 1084; *Wilson v. Kryger,* 26 N. D. 77, 143 N. W. 764; *Raddatz v. Christner,* 103 Neb. 621, 173 N. W. 677.)

J. W. Taylor, for Respondent.

Cook was a mechanic employed in a mechanical trade or calling, and was not engaged in an agricultural pursuit. Webster's New International Dictionary defines the word "pursuit" as follows: "That which one pursues, or engages in, as a course of business or occupation; continued employment; as, mercantile pursuits; a literary pursuit."

The defendant, Massey, was engaged in threshing as a commercial occupation entirely. (*White v. Loades,* 178 App. Div. 236, 164 N. Y. Supp. 1023; *Vincent v. Taylor Bros.,* 180 App. Div. 818, 168 N. Y. Supp. 287; *O. L. Shafter Estate Co. v. Industrial Acc. Com.,* 175 Cal. 522, 166 Pac. 24; *In re Boyer,* 65 Ind. App. 408, 117 N. E. 507; *Miller & Lux, Inc., v. Industrial Acc. Com.,* 32 Cal. App. 250, 162 Pac. 651.)

GIVENS, Commissioner.—Respondent has moved to dismiss this appeal because the same was not taken in time.

The judgment of the district court from which the pending appeal was taken was dated April 25, 1921, and service of notice of appeal was made on July 16, 1921, and filed July 15, 1921. At the time the judgment was rendered the statute regulating the time within which an appeal should be taken was C. S., sec. 7152. Thereafter sec. 6270A, chap. 217, 1921 Sess. Laws, p. 474, at 479, was added, which by the construction given in *McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, at 778, 203 Pac. 1068, shortened the time of appeal to twenty days.

Sec. 6270A became effective May 4, 1921, nine days after the date of the judgment of the district court herein appealed from. Respondent urges that this limited the time within which appellant might appeal to twenty days from the time the act became effective, and cites in support thereof *Bailey v. Kincaid,* 57 Hun, 516, 11 N. Y. Supp. 294; *Stephen v. Lewis,* 62 Md. 229; *Smith v. Packard,* 12 Wis. 371; *Rogers v. Trumbull,* 32 Wash. 211, 73 Pac. 381; *Shelley v. Dampman,* 174 Pa. 495, 34 Atl. 124.

If this theory of respondent's be adopted, there must be read into the statute the proviso that the time within which an appeal must be taken with reference to judgments entered prior to the time that the law became effective dates from such effective date, and not from the date the judgment was entered, and also it must be concluded that the legislature intended the statute to have a retrospective effect. In the absence of any indication of the legislative intent, it is just as reasonable to assume that the legislature did not intend the statute to have a retrospective effect as it is to conclude otherwise. While there is a conflict of authority, this court, in accord with other jurisdictions, has heretofore refused to adopt respondent's theory. The time within which an appeal could be taken is governed by the statute in force at the entry of the judgment. (*Pignaz v. Burnett,* 119 Cal. 157, 51 Pac. 48; *Melde v. Reynolds,* 120 Cal. 234, 52 Pac. 491.)

"As a general rule, the right of appeal is governed by the law applicable thereto in force when the final judgment is rendered, and, unless it is evident from the terms of the statute which gives, modifies, or takes away the right of appeal that it was intended to have a retrospective effect, it has no application to causes in which final judgment has been rendered prior to the time the act in question was passed." (*Rolater v. Strain,* 31 Okl. 58, 119 Pac. 992.)

"In construing statutes with reference to such effect, Sutherland on Statutory Construction announces the rule, in vol. 2, sec. 641, 2d ed., as follows: 'Retrospective legislation is not favored, and is prohibited by the constitution

of some of the states, as being highly injurious, oppressive and unjust; and nowhere will retrospective effect be given to a statute unless it appears that it was the intent of such legislation that it should have such effect.'" (*Lawrence v. Defenbach,* 23 Ida. 78, at 83, 128 Pac. 81; *Bellevue State Bank v. Lilya,* 35 Ida. 270, 205 Pac. 893; *Peavy v. McCombs,* 26 Ida. 143, at 151, 140 Pac. 965.)

The general rule is thus stated in 3 C. J. 1042: "A statute reducing the time for taking an appeal does not apply to proceedings in which judgment has been previously rendered, unless the intention that it shall have a retrospective effect is plainly expressed." (*Jackman v. A. T. & S. F. R. Co.,* 22 N. M. 422, 163 Pac. 1084.)

*Shaphard v. Mixon,* 122 Ark. 530, 184 S. W. 399, lays down the contrary rule, but see *Sparks v. Murray,* 120 Ark. 17, 178 S. W. 909. While the *Shaphard v. Mixon case, supra,* cites *Wilson v. Kryger,* 26 N. D. 77, 143 N. W. 764, 51 L. R. A., N. S., 760, as supporting the conclusion in *Stephens v. Williams,* 122 Ark. 255, 183 S. W. 527, *Raddatz v. Christner,* 103 Neb. 621, 173 N. W. 677, cites *Wilson v. Kryger, supra,* in support of the rule announced therein, which is in accord with the California decisions above noted, and we believe the dissenting opinion in *Stephens v. Williams, supra,* is more consonant with justice and the principles heretofore announced by this court. (*Obermeyer v. Kendall,* 36 Ida. 144, 209 Pac. 888; *Ford v. Ford* (S. D.), 191 N. W. 457; *Ryan v. Supreme Council,* 146 Ill. App. 384; *Cox v. Hart,* 260 U. S. 427, 43 Sup. Ct. 154, 67 L. ed. 332.)

" . . . . Indeed, the rule to be derived from the comparison of a vast number of judicial utterances upon this subject, seems to be, that, even in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject matter, and the occasion of the enactment,

admitting of no reasonable doubt, but precluding all question as to such intention.'' (Endlich on the Interpretation of Statutes, p. 362.)

'' . . . . It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.'' (Cooley on Constitutional Limitations, 7th ed., p. 529.)

''Statutes should not be construed retrospectively, unless it is clear that such was the legislative intention.'' (*In re Frees' Estate,* 187 Cal. 150, 201 Pac. 112.)

The motion to dismiss is therefore not well taken.

This action arises from the death of William A. Cook, the result of an accident which occurred November 12, 1918, while he was acting as separator tender on a steam threshing outfit belonging to J. C. Massey.

An award was made by the Industrial Accident Board in favor of deceased's widow and children, from which an appeal was taken to the district court, which affirmed the award, and this appeal is from the judgment of said court.

Appellant, defendant, in the fall of 1918 was operating a commercial steam threshing outfit, which for some three weeks prior to the accident had been idle. Although conflicting, there is evidence to sustain the lower court's finding that the deceased at the time of the accident was working as an employee and not under an arrangement with appellant for the exchange of labor.

Appellant assigns several errors, only one of which, however, it is necessary to determine.

C. S., sec. 6216, provides that none of the provisions of this chapter (being the chapter on Workmen's Compensation, the statute under which the award was made by the Industrial Accident Board) shall apply to ''agricultural pursuits.'' Respondent contends that commercial threshing is not included within this exception. Appellant contends that it is.

The workmen's compensation law is purely statutory, and is an express departure and innovation so far as the com-

mon law is concerned, explicitly doing away with common-law actions previously applicable to controversies within the scope of the statute. (C. S., sec. 6214.) It is necessary, therefore, to determine the legislative intent as to the meaning of "agricultural pursuits." In ascertaining the legislative intent, it is proper to consider the history of threshing and the generally accepted classification thereof, as being or not being an agricultural pursuit.

" 'When laws are made by a popular government, that is to say, a government of the people, by the people, and for the people,' we may safely assume that words in a statute or a constitution are used in a sense in which the people who made the statute or constitution understood them." (*Adams v. Lansdon,* 18 Ida. 483, at 504, 110 Pac. 280.)

"Words used in a statute without any technical meaning or application should be given their ordinary significance as they are popularly understood, and the language used by the legislature must be construed in the light of the common acceptation of the terms employed." (*In re Boss-ner,* 18 Ida. 519, at 520, 110 Pac. 502.)

The Americana, under the title "American Farm Implements," gives the following history of threshing machines:

"Next to harvesting machines, the threshing machine is undoubtedly the most important feature of the mechanical equipment of modern agriculture. . . . . Cyrus Roberts, of Belleville, Ill., patented in 1852 and 1856 the chief features of the modern separating mechanism. . . . . The horse power was succeeded in the decade following the Civil War by the portable engine, and this in turn by the traction engine, which, for countries where coal is scarce, is fitted to burn straw."

The Encyclopedia Britannica, vol. 1, p. 421, classifies threshing as a subtitle or subsidiary subject under "Agriculture," as does Nelson's Encyclopedia, vol. 1, p. 110. Vol. 26 of the Encyclopedia Britannica, p. 887, with reference to the modern threshing machine, states as follows:

"The first really successful threshing machine—the type which is embodied in modern thrashers—was invented by a

Scotsman named Andrew Meikle in 1786. . . . . When steam was developed as a motive power the portable threshing machinery became more general. . . . . The present-day threshing machine embodies the main features of Meikle's machine. . . . . "

It thus appears that steam threshing-machine outfits have been operated in the United States since shortly after 1866 in much the same manner as at the present time.

In 1893, the Idaho legislature passed the first state law relative to mechanic's liens and farm laborer's liens, and in the section of that act providing for farm laborer's liens, which is in a different section and in a different chapter from the place where mechanic's liens are provided for, threshing was not included as an occupation for which a farm laborer's lien was provided. This act was amended twice prior to 1903, and in 1903, at page 94 of the Session Laws of that year, the word "threshing" was added. Thus the Idaho legislature, some fourteen years prior to the enactment of the workmen's compensation law, had classed a threshing-machine worker as a farm laborer, and it will be observed from a consideration of the authorities hereinafter cited that some of the acts except "farm laborers," while the Idaho statute excepts "those engaged in agricultural pursuits," the latter phrase being much more comprehensive than the former.

"If there be any ambiguity or indefinite expression found in statutes, it is incumbent on the courts to adopt that construction which best accords with the true intent and meaning of all the statutes touching the subject under consideration." (*In re Lavendol's Estate* (Nev.), 209 Pac. 237; 36 Cyc. 1146.)

Our supreme court has had occasion to pass upon the farm laborer's lien law with reference to threshing-machine employment, in the case of *Chapman v. A. H. Averill Machinery Co.,* 28 Ida. 121, 152 Pac. 573, and the construction therein contained clearly indicates that a person claiming a lien because of employment in threshing crops is a farm laborer.

C. S., secs. 2042–2045, under the title "Agriculture," art. 3, require operators of threshing-machines to procure a license from the department of agriculture, to keep certain records, and to make certain reports to that department, under penalty for noncompliance. C. S., sec. 6179, defining "agricultural products," includes "grain." This definition is pertinent, because it is argued that milling and threshing are similar businesses and employments, both dealing with the product of the farm, and that milling is clearly not an agricultural employment. The fallacy of this reasoning is that grain is a farm or agricultural product, which flour, the product of the mill, is not.

The term "agriculture" is defined in 2 C. J. 988 as follows: "The art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of livestock; tillage, husbandry and farming. In its general sense, the word also includes gardening or horticulture."

" 'Agriculture' is defined to be 'the art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of livestock. . . . . The variety of products of the earth, of agricultural implements, and of domestic animals, invited and put on exhibition at agricultural fairs, attests the comprehensiveness of the term, 'agriculture.' It refers to the field, or farm, with all its wants, appointments, and products, as horticulture refers to the garden, with its less important, though varied products." (*Dillard v. Webb,* 55 Ala. 468, 474.)

" 'Agriculture,' as defined by Webster, is 'the art or science of cultivating the ground, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of livestock.' " (*Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895.)

"Threshing machine" is defined in 38 Cyc. 301 as follows: "In agriculture, a steam, water or horse-power machine which in its most complete form beats the grain from the ears of cereals, separates the grain from the straw, and winnows it from the chaff." In the latter definition, it will be noticed that the phrase beginning the definition is "in agriculture."

"A steam engine, used in connection with a pump for irrigating, with a thresher," and with machinery "for cultivating a crop of rice, and not shown to have been used for any other purpose than the cultivation and harvesting of such crop, is a farming utensil" within Civil Code, art. 3259, on which the privilege of the vendor is superior to that of the lessor of the land, and this, whether the engine was bought as part of the pump or of the thresher or at another time and from another source. (*Lahn & Co. v. Carr,* 120 La. 797, 45 So. 707–709.)

A steam thresher for harvesting a rice crop is "a farming utensil within Civil Code, art. 3259, making the vendor's privilege superior to the privilege of the lessor for rent. The word 'utensils' more especially means an implement or vessel for domestic or farming use. See Standard Dictionary. As used in the Code, 'utensils' is a translation of 'utensiles' used in art. 2102 of the Code Napoleon. This word, in France, has been held to include a 'machine a battre' or threshing machine. In French jurisprudence the word is used as synonymous with 'agricultural instruments,' whatever may be their nature. . . . . It has been held in other states of the Union that 'mowers' and 'combined harvesters' used by debtors for necessary farm-work are within the meaning of the term 'farming utensils or implements' as used in exemption laws." (*Laporte v. Libby,* 114 La. 570, 38 So. 457, 458.)

"Horse rakes, gang plows, headers, threshing machines, and combined harvesters are as clearly implements of husbandry as are hand rakes, single plows, sickles, cradles, flails, or an old-fashioned machine for winnowing. There is no ground for excluding an implement from the opera-

38 Idaho.—18

tion of the statute because it is an improvement, and supplants a former implement with less effectiveness for the same purpose." (*Estate of Klemp*, 119 Cal. 41, 63 Am. St. 69, 50 Pac. 1062, 39 L. R. A. 340.)

"A statute exempting farming utensils and implements of husbandry of the judgment debtor enables him to retain as exempt a threshing outfit necessary to carry on his farm operations, though he may also so use it in threshing for others." (*Spence v. Smith,* 121 Cal. 536, 66 Am. St. 62, 53 Pac. 653.)

"Pursuit" is defined by the Funk & Wagnall's New Standard Dictionary as:

"That which is followed as a continued employment with a view to some end; a definite course of action; business or occupation; as, professional *pursuits.*"

Webster's New International Dictionary defines it thus:

"That which one pursues, or engages in, as a course of business or occupation; continued employment; as, mercantile *pursuits;* a literary *pursuit.*"

The Century Dictionary:

"The object of one's endeavors or continued exertions or application; that which one systematically engages in or follows as a recreation, occupation, profession, or trade, or with some similar end in view; course of occupation or employment; as, literary *pursuits;* mercantile *pursuits.*"

The Oxford Dictionary:

"The action of following or engaging in something, as a profession, business, recreation, etc.; that which one engages in or follows."

"Agricultural pursuit" may therefore properly include every process and step taken and necessary to the completion of a finished farm product.

The courts may take judicial notice in a general way of the time or season for the sowing or planting, maturity and the harvesting or gathering of crops. (23 C. J. 156.)

Harvesting is the time when crops of grain or grass are gathered, also the gathering of crops of any kind. (29 C. J.

214.) Can it be said that a crop of grain has been gathered until it has been threshed?

The cases passing upon this question under employers' liability acts are in conflict. New York, in *White v. Loades,* 178 App. Div. 236, 164 N. Y. Supp. 1023, *Vincent v. Taylor Bros.,* 180 App. Div. 818, 168 N. Y. Supp. 287, Indiana, *In re Boyer,* 65 Ind. 408, 117 N. E. 507, and Colorado, in *Industrial Com. v. Shadowen,* 68 Colo. 69, 187 Pac. 926, 13 L. R. A. 952, have held that a laborer employed upon a threshing machine is not a "farm laborer," while on the other hand, Minnesota, in *State ex rel. Bykle v. District Court,* 140 Minn. 398, 168 N. W. 130, L. R. A. 1918F, 198, and Utah, in *Jones v. Industrial Com.,* 55 Utah, 489, 187 Pac. 833, have held that he is an "agricultural laborer." It thus appears that a distinction is made between "farm laborer" and "agricultural laborer" or pursuit. The California Industrial Accident Commission has held that one working upon a hay-baling press is engaged in farm labor. (*Morris v. Spears,* 1 Dec. Ind. Acc. Com. of Cal. 317; *Vincent v. Loomis,* 2 Dec. Ind. Acc. Com. of Cal. 168; *Neimeyer v. Volger,* 2 Dec. Ind. Acc. Com. of Cal. 335.)

As we have indicated above, this is a question solely of legislative intent, and since there is authority supporting the proposition that an employee upon a threshing machine is following an "agricultural pursuit," and our own legislature has indicated very strongly that they have classified threshing as an agricultural pursuit, that indication will be followed.

The deceased being engaged in an excepted occupation, the Industrial Accident Board was without jurisdiction to make an award, as was likewise the district court to confirm the same.

### ON RE-ARGUMENT.

T. BAILEY LEE, Commissioner.—After the preparation of the foregoing opinion on the original hearing but before the same was filed, re-argument was ordered and a further hearing had. No argument has been advanced to

change the court's views expressed in the former opinion. But there is a further reason why the judgment of the lower court should not stand.

Appellant contends in specification of error No. 3 that "the court erred in holding that the award of the Industrial Accident Board was in accordance with the law and the facts, and that the said Industrial Accident Board had jurisdiction of the case." In his appeal to the district court upon questions of law from the award of the board, he had urged "that the award of the Industrial Accident Board was made on its own initiative, and that the employer and defendant was not advised as to the time and place when said matter was to be heard, and had no opportunity to meet the witnesses therein, or examine the proofs made against him," all of which was by respondent denied, and further countered by the averments that the employer "had been advised of the time and place of hearing, and did not offer to introduce testimony in such matter before said board, and had ample opportunity to offer such testimony, and to examine the proof made against him."

In support of his appeal, the employer introduced certain exhibits purporting to constitute the record before the board consisting mainly of the findings and award, a first notice of claim and preliminary application for compensation signed by the widow, and a practically similar notice unsigned but bearing the employer's certificate that the deceased at the time of his death was employed by defendant, (Ex. "A"), and a letter written the board by the defendant complaining of the facts set out in the notice, denying his liability, and stating the grounds of his defense (Ex. "C").

There is nothing in this record to show that a hearing on the issues was had, or a time and place set therefor, or notice thereof given the defendant, or that the defendant was present at any hearing or that he defaulted after due notice. While there is no positive evidence in the transcript that the entire record was introduced, in the absence of any motion for nonsuit based thereon by respondent, or

objection or demand by her that further record be produced, it would appear that all parties considered the instruments and documents submitted as constituting the full record; and, inasmuch as the statute does not specify what the record on appeal shall contain, this court cannot presume that any part thereof was not before the district court.

The Industrial Accident Board, being a body exercising special judicial functions in its determination of issues between man and man, and indirectly imposing a pecuniary liability upon the loser, must pursue the same general conduct that a court would exercise in safeguarding the fundamental, constitutional rights of the citizen, which cannot be abridged except after due notice and a fair and impartial hearing. (*Abrams v. Jones*, 35 Ida. 532, 207 Pac. 724; Cooley, Const. Limitations, p. 518.)

The question here then is: "Did the defendant have an opportunity to make his defense before the board?" The record is silent; and in such instances, where there is a direct attack, no presumptions in favor of jurisdiction or due process can be indulged in. The validity of the judgment or award must be affirmatively shown.

It is true that the board declared its findings to have been arrived at "after a careful examination and consideration of all the evidence submitted in the case" (Ex. "A"), but this is a mere recital that wholly fails to affirm either the presence or the default of the defendant after due notice of the time and place of hearing, all of which are indispensable to a valid award.

The record being silent in the face of a direct attack, the burden was upon respondents to make the showing, and they did not discharge it.

Budge, C. J., and McCarthy and William A. Lee, JJ., concur.

PER CURIAM.—The foregoing opinions are hereby approved as the opinions of the court and it is ordered that the judgment of the lower court be vacated and the proceeding dismissed. Costs awarded in favor of appellant.