660 P.2d 1355

**CITY OF GARDEN CITY, a municipal corporation, Plaintiff-Appellant,**

**v.**

**CITY OF BOISE, a municipal corporation; Richard R. Eardley, Ralph J. McAdams, Fred L. Kopke, Marge Ewing, Berne K. Jensen, Joy Buersmeyer, and Glen E. Selander, individually and in their official capacities as duly elected officials of the City of Boise; The County of Ada, a political subdivision of the State of Idaho; Vern Emery, Gary Bermeosolo, and William Gratton, individually and in their official capacities as Ada County Commissioners; City of Eagle, a municipal corporation; and Wayne Kidwell, Attorney General of the State of Idaho, Defendants-Respondents,**

**and**

**Dave WILLIAMS, Plaintiff in Intervention,**

**v.**

**CITY OF BOISE, a municipal corporation; Richard R. Eardley, Ralph J. McAdams, Fred L. Kopke, Marge Ewing, Berne K. Jensen, Joy Buersmeyer, and Glen E. Selander, individually and in their official capacities as duly elected officials of the City of Boise; The County of Ada, a political subdivision of the State of Idaho; Vern Emery, Gary Bermeosolo, and William Gratton, individually and in their official capacities as Ada County Commissioners, City of Eagle, a municipal corporation; Wayne Kidwell, Attorney General of the State of Idaho, Defendants in Intervention,**

**and**

NORTHWEST BOISE NEIGHBORHOOD ASSOCIATION, INC., an Idaho corporation, Plaintiff in Intervention—Respondent,

v.

CITY OF GARDEN CITY, a municipal corporation, Defendant in Intervention—Appellant,

and

Dave Williams, an individual, Defendant in Intervention.

No. 13648.

Supreme Court of Idaho.

March 25, 1983.

**514**

William L. Mauk, Boise, for appellant City of Garden City.

Michael C. Moore, Lewiston, for respondent City of Boise.

James C. Harris, Boise, for respondent Ada County.

Stanley W. Welsh and Fredric V. Shoemaker, Boise, for respondent City of Eagle.

David H. Leroy, Atty. Gen., for respondent State of Idaho.

Ernest A. Hoidal, Boise, for respondent Northwest Neighborhood Ass'n.

HUNTLEY, Justice.

This action involves Ada County and three of its municipalities, Boise, Garden City and Eagle. The controversy arose under Idaho's Local Planning Act of 1975, Chapter 65, Title 67, Idaho Code. Pursuant to I.C. § 67–6526(c) of that act, the governing board of each city was required on or before January 1, 1978, to adopt by ordinance a map identifying the area of city impact within the unincorporated areas of Ada County. The object of this requirement was to delineate areas of future contiguous growth in order to assure their orderly development and thereby reconcile potentially competing designs for boundary expansion with accepted land use planning principals.

The areas of city impact adopted by the three cities were in conflict; the ordinances of each city resulted in overlapping impact area boundaries. The local planning act made provision for settlement in such eventuality. As a first step, it provided for negotiation between the cities. In the event negotiations failed, the second step provided for reference to the Board of County Commissioners which, after consulting the affected cities, was to recommend adjustment. If any city objected to the county commissioner's recommendations, then the act provided that the city objecting could "seek a declaratory judgment from the district court adjusting the areas of city impact."

Upon concluding the negotiation phase, Garden City objected to the adjustments recommended by Ada County, and thereafter instituted this action requesting that the district court adjust Boise's area of impact to eliminate those areas lying within the boundaries of Garden City's proposed impact area.

In 1979, while this action was pending, the legislature amended I.C. § 67–6526 eliminating recourse to district court as a means of settling overlapping impact area disputes. The act now provides that if any city objects to the adjustment recommendations of the county commissioners a special election shall be conducted within sixty days for the purpose of submitting to the qualified electors residing in the overlapping impact area the determination in which city's area of impact they wish to be included. The amendment further provides that the results of the election are conclusive and binding without any appeal.

On June 25, 1979, Boise filed a motion to compel election pursuant to the statute as amended. Following hearing and submission of briefs by the parties, the trial court issued a memorandum decision and order, dismissing the case in its entirety for want of jurisdiction.

The issues presented on this appeal are:

(1) Whether the 1979 amendment to the area of city impact provision of the Local Planning Act substituting a special election in lieu of a declaratory judgment action as a means of adjusting overlapping impact areas may be applied retroactively.

(2) Whether the 1979 amendments to the area of impact provisions of the Local Planning Act are in violation of the Constitution of the State of Idaho.

(3) Whether substitution of the electoral process as a means of resolving local planning disputes constitutes an unlawful delegation of police powers.

(4) Whether the district court erred in failing to address the other constitutional issues raised by Garden City.

## I

■ Generally a statute will not be applied retroactively in the absence of clear legislative intent to that effect. I.C. § 73–101. *Johnson v. Stoddard,* 96 Idaho 230, 526 P.2d 835 (1974). However, it also is the rule in Idaho that retroactive legislation is only that which affects vested or already existing rights. *Hidden Springs Trout Ranch, Inc., v. Allred,* 102 Idaho 623, 624, 636 P.2d 745, 746 (1981); *Buckalew v. City of Grangeville,* 100 Idaho 460, 600 P.2d 136 (1979).

■ Remedial or procedural statutes which do not create, enlarge, diminish or destroy contractual or vested rights are generally held to operate retrospectively. *Ohlinger v. U.S.,* 135 F.Supp. 40 (D.C.Idaho 1955).

"A statute merely affecting the remedy may apply to, and operate on, causes of action which had accrued and were existing at the time of the enactment of the statute, as well as causes of action thereafter to accrue, and to all actions, whether commenced before or after its enactment. 82 C.J.S., Statutes, § 421; 11 Am. Jur., Constitutional Law, §§ 373 and 382." *Id.*

■ Garden City has no inherent *right* of its own to annex property. In *Caesar v. State,* 101 Idaho 158, 160, 610 P.2d 517, 519 (1980), this court stated:

"Our analysis of this issue necessarily involves a review of the basic tenets of municipal corporation law. Idaho has long recognized the proposition that a municipal corporation, as a creature of the state, possesses and exercises only those powers either expressly or impliedly granted to it. [Citations omitted.] ... Thus, under [the] rule, a municipal corporation may exercise only those powers granted to it by either the state constitution or the legislature and the legislature has absolute power to change, modify or destroy those powers at its discretion. *State v. Steunenberg,* 5 Idaho 1, 4, 45 P. 462, 463 (1896)."

In amending I.C. § 67–6526, the legislature exercised its power to modify a municipality's powers by substituting the electoral process for the declaratory judgment action.

## II

■ Next, Garden City urges that the amendment to I.C. § 67–6526(c) is unconstitutional in that it deprives both Garden City and the property owners in the overlapping impact areas of due process and equal protection. Garden City lacks standing to assert the rights of property owners in the overlapping impact area and the city itself has no vested rights for the reasons set forth in part I above.

## III

Garden City argues that the substitution of the electoral process is an unlawful delegation of police power, alleging it is improper to have the election determine these matters. The cases relied on by Garden City for this proposition concern alleged unconstitutional delegation of zoning power to adjoining land owners, which circumstance is not involved here. Those cases dealt with zoning regarding uses of land, *i.e.,* consent of adjoining landowners to obtain a construction permit, liquor license, construct a multiple dwelling, an apartment building, and a mobile home park.

■ In this case, all electors within the impact area are permitted to vote—no power is unconstitutionally delegated to one neighbor to determine the limitation on another's use of his land.

## IV

■ Finally, Garden City argues that the district court erred in failing to address the other constitutional issues raised in its declaratory judgment action. Garden City sought to have the Local Planning Act of 1975 declared unconstitutional in its entirety. It is a firmly established principle of

law, of uniform application, that the constitutionality of a statute may not be questioned by one who has voluntarily claimed and accepted its benefits. *State v. City of Gooding,* 75 Idaho 36, 266 P.2d 655 (1953). Garden City is availing itself of the benefits of the Local Planning Act by establishing impact areas pursuant to that act, and it cannot simultaneously contend that the act is unconstitutional.

The order of dismissal is affirmed. No costs or attorney fees allowed.

DONALDSON, C.J., and BAKES, J., concur.

SHEPARD, J., concurs in the result.

BISTLINE, Justice, dissenting.

There is no question but that the trial court was initially cloaked with jurisdiction. As Judge McClintick worded it: "The broad question presented . . . is *whether the amendment relates back* to and governs this case." He ruled that it did, "and as a consequence the Court has lost jurisdiction, this case must be dismissed, and the issue must be settled by the election procedure."

It is clear from Judge McClintick's memorandum decision that the 1979 amendment was special legislation aimed at the then pending declaratory judgment action, and as such possibly within the prohibition of article 1, section 2 of the Idaho Constitution, possibly within the prohibition of article 3, section 19, governing limitation of civil actions (once commenced), but for certain within the provisions of article 11, section 12 of the Idaho Constitution[1] and I.C. § 73–101.[2]

Garden City relies on *Cook v. Massey,* 38 Idaho 264, 220 P. 1088 (1923).[3] That case was the backbone of the Court's unanimous opinion in the rather recent case of *Unity Light & Power Co. v. City of Burley,* 92 Idaho 499, 445 P.2d 720 (1968), wherein the Court said:

"This action was instituted on August 28, 1961, when Unity filed its complaint; Burley filed its answer and counterclaim on February 16, 1962, and therein it sought by its third cause of action to exercise the right of eminent domain by condemnation of Unity's property. Even though this case came on for trial in December 1963, subsequent to the declared effective date of S.L.1963, ch. 269 (June 1, 1963), Burley's right to exercise the power of eminent domain properly should have been adjudicated in accordance with the law in effect at the time of the filing of its answer and cross-claim. The reason for this conclusion is that

---

1. Article 11, section 12 of the Idaho Constitution reads as follows:

 "The legislature shall pass no law *for the benefit of a* railroad, *or other corporation,* or any individual, or association of individuals retroactive in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past." (Emphasis added.)

 "Other corporation" certainly includes the City of Boise, a municipal corporation.

2. I.C. § 73–101 provides:

 "No part of these compiled laws is retroactive, unless expressly so declared."

 Nothing in chapter 87, 1979 Idaho Sess.Laws, declared the enactment retroactive. Where the legislature was enacting a new remedy because of the Garden City-Boise litigation in district court, it would be absurd to suggest that the legislature intended chapter 87 to apply to that litigation, but forgot to say so. It is more

realistic to believe that the legislature knew or was properly advised that it could not pass legislation nullifying a pending lawsuit which was predicated on existing statutory law.

3. In the criminal context, *State v. Augustine,* 197 Kan. 207, 416 P.2d 281 (Kan.1966), appears to sustain Garden City. Therein the Kansas Supreme Court unanimously held in the converse situation:

 "2. A legislative enactment which enlarges the jurisdictional age limits of the juvenile court to include sixteen- and seventeen-year-old male persons constitutes a change in the substantive law, and will not be construed as having retroactive application to cases pending on the effective date of the act in the absence of language disclosing a contrary legislative intent."

 416 P.2d at 282 (Syllabus by the Court).

*unless a contrary intention clearly appears therein, a statute will not be given retrospective effect. Cook v. Massey,* 38 Idaho 264, 265, 200 [220] P. 1088, 35 A.L.R. 200 (1923). I.C. § 73–101. *The legislature, in setting the effective date of the new statute, demonstrated an intent that it not be given a retrospective intent. 50 Am.Jur. Statutes § 478, p. 494. I.C. § 61–333B is more than a mere remedial or procedural statute; it purportedly involves a change of substantive rights in the exercise of the right of eminent domain."*

92 Idaho at 503–04, 445 P.2d at 724–25. (Emphasis added.)

Neither *Cook* nor *Unity Light* were mentioned in the trial court's decision. It is difficult to distinguish this case from *Unity Light.* Clearly, Garden City, prior to the 1979 amendment, had a substantive right to have the dispute settled by a district court, rather than by a county-conducted [4] popular vote. There is an important difference, as is readily observed by matching the adverse contentions in the case of *Gumprecht v. City of Coeur d'Alene,* Sup.Ct. No. 14238, now pending in this Court. Similarly, there is a vast difference in the entitlement to court and a jury resolution of a controversy, as against resolution by arbitration. For a good example in that area, *see Loomis v. Cudahy,* 104 Idaho 106, 656 P.2d 1359 (1982).

---

4. I.C. § 67–6526(c) as amended provides in pertinent part:

 "If any city objects to the recommendation of the board of county commissioners, the county shall within sixty (60) days from the date of the recommendation conduct a special election and establish polling places for the purpose of submitting to the qualified electors residing in the overlying impact area, the question of which area of city impact the electors wish to reside."

However, not all nearly adjacent cities in Idaho are in the same county. I.C. § 67–6526(a)(3) even provides that "[a]reas of city impact, together with plan and ordinance requirements, may cross county boundaries by agreement of the city and county concerned if the city is within three (3) miles of the adjoining county." But, I.C. § 67–6526 makes no provision for resolution of disputes regarding overlapping impact areas lying in more than one county. This presents yet another problem.