# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51326-2023

GUY DEKLOTZ, for himself and GUY
DEKLOTZ on behalf of all others similarly
situated,

    Plaintiff-Appellant,

v.

NS SUPPORT, LLC, dba NEUROSCIENCE
ASSOCIATES; PAUL MONTALBANO,
M.D., and NORTHWEST OCCUPATIONAL
MEDICINE AND NEUROSURGICAL
SPINE INSTITUTE, LLC,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2025 Term

Opinion filed: August 19, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. James Cawthon, District Judge.

The decision of the district court is <u>reversed</u>, its judgment is <u>vacated</u>, and the case is <u>remanded</u>.

Hepworth Holzer, LLC, Boise, for Appellant. Kurt D. Holzer argued.

Powers Farley, PC, Boise, for Respondents. Portia L. Rauer argued.

_____

ZAHN, Justice.

This case concerns whether a medical lien constitutes an "extraordinary collection action" under the Idaho Patient Act ("IPA") such that a medical provider was required to comply with the IPA before filing a lien. Guy DeKlotz appeals from the district court's judgment dismissing his complaint against Paul Montalbano, M.D., and NS Support, LLC, dba Neuroscience Associates ("NSA") (collectively "Montalbano"). DeKlotz sought a declaration that Montalbano's medical lien was invalid because he failed to satisfy the IPA's requirements before filing his lien. The district court determined that Montalbano's lien was not subject to the IPA because it was not an "extraordinary collection action." DeKlotz appeals. We reverse because Montalbano's medical

lien falls within the IPA's definition of extraordinary collection action and therefore was subject to the IPA. Montalbano concedes he failed to satisfy the IPA's requirements before filing the lien; as a result, Montalbano's medical lien is invalid.

## I. FACTUAL AND PROCEDURAL BACKGROUND

DeKlotz suffered spinal fractures in a car accident. Deklotz was transported to St. Alphonsus Regional Medical Center, where he was treated by the on-call trauma surgeon, Dr. Montalbano. Montalbano surgically repaired DeKlotz's fractures and provided post-operative care with the assistance of a surgical nurse. DeKlotz received separate invoices from Montalbano and the surgical nurse for the services provided.

At the time he was treated by Montalbano, DeKlotz was insured through SelectHealth. Montalbano received DeKlotz's health insurance information, but he does not have a contractual relationship with SelectHealth. Montalbano did not bill DeKlotz's insurance for the cost of his services but instead recorded a medical lien pursuant to Idaho Code section 45-704B. That section permits certain medical providers to file a lien against those causes of action, suits, claims, counterclaims, or demands that a patient may have:

> Every individual or association licensed or incorporated under the laws of the state of Idaho to practice medicine and surgery (hereinafter "physician") shall be entitled to a lien for the reasonable charges for medical care and treatment rendered an injured person upon any and all causes of action, suits, claims, counterclaims, or demands accruing to the person to whom such care and treatment was furnished, or to the legal representatives of such person, on account of injuries giving rise to such causes of action and which necessitate such medical care and treatment.

I.C. § 45-704B (2020).[1] Montalbano's lien was for $183,829.60, comprised of $160,016.64 for surgery and post-operative care and $23,812.96 for nursing care provided during the surgery. The medical lien also identified NSA as a lien claimant. Montalbano co-owns NSA with six other neurosurgeons. NSA employs staff to assist the physicians with the operation of their practices.

After the lien was filed, DeKlotz retained an attorney who reached out to NSA's claims coordinator to advise that the lien was improper under the IPA. DeKlotz's counsel explained that the IPA required Montalbano to bill DeKlotz's insurance before filing a medical lien. The claims

---

[1] Idaho Code section 45-704B was amended in 2024. Act of Mar. 28, 2024, ch. 236, 2024 Idaho Sess. Laws 819, 820. However, because the lien in this case was filed in August 2021, we apply the statutory language that was in effect at that time. *Gailey v. Jerome County*, 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987) ("[I]n Idaho, a statute is not applied retroactively unless there is 'clear legislative intent to that effect.' " (first citing *City of Garden City v. City of Boise*, 104 Idaho 512, 515, 660 P.2d 1355, 1358 (1983); and then citing *Johnson v. Stoddard*, 96 Idaho 230, 234, 526 P.2d 835, 839 (1974))).

coordinator responded that the lien was proper under Idaho Code section 45-704B, but offered to discount the lien 60%, making the lien amount $73,531.84. DeKlotz's counsel maintained that Montalbano was required to bill DeKlotz's insurance. The claims coordinator then retracted the offered discount.

DeKlotz filed a complaint against Montalbano, seeking a declaratory judgment that Montalbano violated the IPA by failing to bill DeKlotz's insurance prior to filing the medical lien, which rendered the lien invalid. DeKlotz also requested a declaration that the medical lien was invalid because the lien amount of $183,829.60 was not a "reasonable charge," as required by section 45-704B. DeKlotz and Montalbano each filed motions for partial summary judgment on the issue of whether the lien was invalid under the IPA. Montalbano alleged that the IPA was inapplicable to liens filed pursuant to Idaho Code section 45-704B, while DeKlotz sought summary judgment on his claim that the lien amount was an unreasonable charge. The district court concluded that Montalbano's lien was not subject to the IPA because the Act only applies to "extraordinary collection actions," and Montalbano's lien did not constitute such an action. However, the district court determined there was a genuine dispute of material fact whether the lien amount was a "reasonable charge" for purposes of section 45-704B.

The district court held a bench trial on the reasonable charge issue and multiple experts testified regarding the reasonableness of the lien amount. The district court issued a written opinion that concluded that the nurse's charges should be deducted from the lien because the nurse was not "licensed . . . to practice medicine and surgery" as required by section 45-704B. However, the court determined that Montalbano's charges were reasonable for purposes of the statute. The district court concluded that the legislature intended the phrase "reasonable charges" in the statute to encompass a physician's actual charges rather than the objective standard of a reasonable person. The district court entered judgment dismissing DeKlotz's claims with prejudice. DeKlotz timely appealed.

## II.     ISSUES ON APPEAL

1. Whether Montalbano's medical lien filed pursuant to Idaho Code section 45-704B constitutes an extraordinary collection action under the IPA.

2. If the medical lien is subject to the IPA, whether it is invalid because Montalbano failed to bill DeKlotz's insurance before filing the lien.

3. Whether either party is entitled to attorney fees.

## III.    STANDARDS OF REVIEW

"When this Court reviews a district court's decision on summary judgment, we apply the same standard used by the district court." *Rose v. Martino*, ___ Idaho ___, ___, 562 P.3d 972, 982 (2025) (citing *Papin v. Papin*, 166 Idaho 9, 18, 454 P.3d 1092, 1101 (2019)). "Summary judgment is proper if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting I.R.C.P. 56(a)). "Summary judgment is improper if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *Clover v. Crookham Co.*, ___ Idaho ___, ___, 561 P.3d 875, 880 (2024) (citation modified) (quoting *Owen*, 168 Idaho at 641, 485 P.3d at 137).

## IV.    ANALYSIS

### A.  Montalbano's medical lien is subject to the requirements of the IPA because it constituted an "extraordinary collection action."

This appeal requires us to address the relationship between the medical lien statute and the IPA. Montalbano filed his medical lien pursuant to Idaho Code section 45-704B. The statute is titled "Liens for Medical Care" and was enacted in 1979. It permits physicians to file:

> [A] lien for the reasonable charges for medical care and treatment rendered an injured person upon any and all causes of action, suits, claims, counterclaims, or demands accruing to the person who whom such care and treatment was furnished . . . on account of injuries giving rise to such causes of action and that necessitate such medical care and treatment.

I.C. § 45-704B (2020).

Over forty years later, in 2020, the IPA was enacted to "govern the fair collection of debts owed to health care providers" and sets forth several requirements related to medical debt collection. I.C. § 48-302 (2020); Act of Mar. 16, 2020, ch. 139, 2020 Idaho Sess. Laws 426, 426–30. Relevant to this case, the IPA prohibited medical providers from engaging in an "extraordinary collection action" without first submitting medical charges to the patient's insurance within forty-five days from the date of service. I.C. § 48-304(1)(a) (2020);[2] *see* I.C. §§ 48-303(9) (2020), 41-5903(27).

---

[2] The IPA was amended in 2022. Act of Mar. 25, 2022, ch. 264, 2022 Idaho Sess. Laws 844, 844–50. However, the lien in this case was filed in August 2021. Therefore, we apply the statutory language that was in effect at that time. *Gailey v. Jerome County*, 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987) ("[I]n Idaho, a statute is not applied retroactively unless there is 'clear legislative intent to that effect.' " (first citing *City of Garden City v. City of Boise*, 104 Idaho 512, 515, 660 P.2d 1355, 1358 (1983); and then citing *Johnson v. Stoddard*, 96 Idaho 230, 234, 526 P.2d 835, 839 (1974))).

The primary issue on appeal is whether the IPA applies to Montalbano's medical lien. DeKlotz argues that it does, while Montalbano contends that it does not. We agree with DeKlotz and hold that the IPA's definition of "extraordinary collection action" encompasses Montalbano's medical lien."

"Issues of statutory interpretation are questions of law which this Court reviews de novo." *Idaho Dep't of Health & Welfare v. John Doe (2022-32)* (*In re Jane Doe*), 171 Idaho 677, 680, 525 P.3d 715, 718 (2023). "Statutory interpretation begins with the literal language of the statute." *Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020). "Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction." *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009) (quoting *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)).

At the time Montalbano filed his medical lien, the IPA defined an "extraordinary collection action" as:

[A]ny of the following actions done in connection with a patient's debt:

. . . .

(c) Commencing any judicial or legal action or filing or recording any document in relation thereto, including but not limited to:

(i) Placing a lien on a person's property or assets;

(ii) Attaching or seizing a person's bank account or any other personal property;

(iii) Initiating a civil action against any person; or

(iv) Garnishing an individual's wages.

I.C. § 48-303(3)(c) (2020). According to the statute, two criteria must be met for an action to be considered an "extraordinary collection action." First, one of the "following actions" must have occurred. I.C. § 48-303(3) (2020). Second, the action must have been "done in connection with a patient's debt." *Id.* Montalbano's medical lien meets both criteria.

First, Montalbano's medical lien constitutes "placing a lien on a person's property or assets." *Id.* Montalbano recorded a medical lien "against any and all causes of action, suits, claims, counterclaims, or demands" DeKlotz had against the driver of the vehicle and his insurance. Idaho has long recognized that the right to sue for an injury is property. *Angelos v. Schatzel*, 174 Idaho 426, ___, 556 P.3d 441, 447 (2024) ("More than a hundred years ago, the Idaho Supreme Court

5

recognized that the 'right to sue for an injury is a right of action—it is a thing in action, and is property.' " (quoting *Muir v. City of Pocatello*, 36 Idaho 532, 540, 212 P. 345, 347 (1922))).

Second, the lien was recorded in connection with a debt of DeKlotz. At trial, Montalbano's standard patient payment contract was admitted into evidence. Montalbano testified that he had DeKlotz sign this contract. The contract provides that if someone else caused the patient's injury, Montalbano may file a medical lien but that the patient is ultimately responsible for the charges:

> *Responsibility for payment begins the date services are provided. . . .*
>
> In cases where a third-party liability insurance carrier is involved, such as in an auto accident, a lien may be placed, in accordance with Idaho Code § 45-701, *et seq.*, with the third party liability insurance carrier.
>
> Provisions in our participating provider contracts with health insurance company's [sic] request, permit, and, in many instances, direct us to send your bill to the third party liability insurance carrier for full payment before we send it to your medical plan or health insurance for payment. For example, if your treatment was for injuries caused by someone else, we will submit your bill to the other person's insurance company (third party liability insurance carrier) for payment in full, before we send your bill to your health insurance to pay. . . .
>
> . . . .
>
> *If you have a balance due after all possible insurance carriers have paid, or if you do not have insurance, the following options are offered*:
>
> - Online payments[;]
>
> - Payments by cash, check or credit card;
>
> - Short term internal payment plans not to exceed three (3) months; or
>
> - Long term payment plans through DL Evans Bank for plans beyond three (3) months. These payment plans are administered by DL Evans Bank on behalf of your physician.
>
> - We reserve the right to charge interest on balances over 120 days old from the date of service. The fee is assessed annually at 12% or a monthly interest rate of 1%.
>
> . . . .
>
> I have read the information about how the payment process works at Neuroscience Associates. *I understand and agree that I am financially responsible for the payment of medical charges incurred on my behalf as outlined above.*

(Emphasis added.) The unambiguous language of the contract demonstrates that Montalbano's charges were a debt of DeKlotz. Moreover, "a lien is a charge upon property to secure payment of a debt . . . ." *See Chavez v. Barrus*, 146 Idaho 212, 221, 192 P.3d 1036, 1045 (2008). If DeKlotz

6

had no liability on the debt, as Montalbano asserts and the district court concluded, it is unclear how Montalbano had the right to file a lien against DeKlotz's property to secure payment of a nonexistent debt.

Below, the district court determined that the lien did not concern a debt of DeKlotz because "[t]he patient was never sent an invoice. There was never a debt to begin with." Montalbano claims that the lien amount is not DeKlotz's debt because Montalbano never demanded payment from DeKlotz. DeKlotz concedes that Montalbano has not made demand on DeKlotz to pay the charges, but argues that, regardless of the outcome of the tort claim, he is responsible for the debt until it is discharged. Although Montalbano testified that he is generally willing to help negotiate down liens from his regular fee schedule, he never disclaimed the patient contract that indicated DeKlotz was responsible for any unpaid charges. To the contrary, the plain language of the patient contract indicates that DeKlotz was liable as of the date services were rendered and that he would remain liable for any balance remaining after third-party insurance is billed. The evidence presented at trial thus established that the amount claimed in the medical lien is a debt of DeKlotz.

Montalbano's medical lien thus met both of the IPA's criteria for an extraordinary collection action: (1) "a lien on a person's property or assets" that was (2) recorded "in connection with a patient's debt." I.C. § 48-303(3)(c). As such, Montalbano was required to comply with the provisions of the IPA when filing the medical lien.

Montalbano argues that the legislature did not intend the IPA to apply to medical liens filed under section 45-704B because it is impossible to comply with both statutes. He argues that requiring him to comply with the IPA would effectively nullify his right to file a medical lien. Therefore, he argues that we must harmonize both statutes so he is not deprived of his statutory right to file a medical lien. Montalbano's arguments are unpersuasive.

We recognize that at the time Montalbano filed the medical lien in this case, it was extremely difficult, if not practically impossible, to meet the requirements of the IPA prior to filing a medical lien pursuant to section 45-704B.[3] Under the IPA, a provider could not engage in an extraordinary collection action until at least ninety days after providing the patient with a final

---

[3] The legislature's recent amendments to the IPA and section 45-704B specifically address the applicability of the IPA to medical liens. *See* Act of Mar. 28, 2024, ch. 236 § 1, 2024 Idaho Sess. Laws 819, 819 (amending Idaho Code section 45-702 to provide that a hospital care "lien may additionally be filed during the thirty (30) days after the hospital has received payment from the third-party payor"); *id.*, ch. 236 § 4, 2024 Idaho Sess. Laws at 821 (amending IPA to allow for the filing of medical liens as long as certain timeliness requirements are met).

7

statement. I.C. § 48-304(5) (2020). The final statement had to include a "detailed description of all reductions, adjustments, offsets, [and] third-party payor payments" and "[t]he final amount that the patient is liable to pay after taking into account all applicable reductions . . . ." I.C. § 48-303(4)(f), (g) (2020). On the other hand, to perfect a lien under Idaho Code section 45-704B, the physician was required to file the lien within ninety days after the last day of medical service. I.C. § 45-704B (2020). While it may have been theoretically possible for Montalbano to provide DeKlotz with a final statement containing all the required information on the day Montalbano last provided services to DeKlotz, we recognize that it was unlikely Montalbano would have all the necessary information to do so at that point.

We acknowledge the difficult position this put Montalbano in, but we are not at liberty to disregard the plain language of the IPA. "Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction." *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009) (quoting *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)). It is true that, when construing statutes, this Court must "harmonize and reconcile laws *wherever possible* and . . . adopt that construction of statutory provision which harmonizes and reconciles it with other statutory provisions." *Sweitzer v. Dean*, 118 Idaho 568, 572, 798 P.2d 27, 31 (1990) (emphasis added). However, in this case, it is not possible to harmonize the IPA with section 45-704B. Each unambiguously identifies a timeframe. "If the statue as written is socially or otherwise unsound, the power to correct it is legislative, not judicial." *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006) (citing *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987)).

For the reasons discussed above, we conclude that the filing of Montalbano's lien was an extraordinary collection action and was subject to the requirements of the IPA. We are not at liberty to disregard the plain language of the IPA because it may work a hardship on Montalbano. The policy arguments he raises on appeal are more properly directed to the legislature.

## B. Montalbano's medical lien is invalid because he failed to comply with the IPA.

We now turn to DeKlotz's argument that Montalbano failed to comply with the IPA because he did not bill DeKlotz's insurance prior to filing the medical lien. DeKlotz argues that this failure renders the lien invalid. Montalbano concedes that he did not bill DeKlotz's insurance prior to filing his medical lien.

As previously discussed, the IPA prohibits a healthcare provider from engaging in an extraordinary collection action against a patient unless the healthcare provider first submits its charges to the patient's insurance. I.C. § 48-304(1) (2020). Montalbano did not comply with section 48-304 and is thus precluded from filing a medical lien against DeKlotz's property. As such, we hold that the medical lien is invalid. Because we hold that the lien is invalid, we do not need to address DeKlotz's alternative argument that Montalbano's charges were not reasonable for purposes of Idaho Code section 45-704B.

Having concluded that Montalbano's lien is invalid, we reverse the district court's order denying DeKlotz's motion for summary judgment. We also vacate the district court's entry of judgment in favor of Montalbano and direct the district court on remand to enter judgment in favor of DeKlotz and declare Montalbano's lien invalid.

## C. DeKlotz is entitled to attorney fees on appeal under section 48-305(3).

DeKlotz seeks his attorney fees for the proceedings below and on appeal under Idaho Code sections 48-305(3) and 48-311. Section 48-305(3) provides that "if a patient in a contested judgment is a prevailing party, then the patient shall be entitled to recover from the nonprevailing party all costs, expenses, and fees, including attorney's fees, incurred by the patient in contesting the action . . . ." I.C. § 48-305(3). The IPA defines a contested judgment as "a court judgment sought by one (1) party that is challenged by another party through a filing with the court or by presenting evidence or argument at a hearing before the court." I.C. § 48-303(2).

We conclude that DeKlotz is entitled to attorney fees on appeal under section 48-305(3) because this matter concerned a contested judgment and DeKlotz is the prevailing party. The IPA's definition of contested judgment applies to actions commenced by either the medical provider or the patient. Section 48-305(3) mandates an award of attorney fees to the patient for "contesting" the action. According to Black's Law Dictionary, to "contest" means "1. To strive to win or hold; contend . . . . 2. To litigate or call into question; challenge . . . . 3. To deny an adverse claim or assert a defense to it in a court proceeding . . . ." *Contest*, Black's Law Dictionary (11th ed. 2019). Here, DeKlotz sought a declaratory judgment declaring Montalbano's lien invalid. Montalbano opposed DeKlotz's requested relief, which required DeKlotz to litigate the claim. We conclude that DeKlotz's actions of filing a declaratory judgment action to challenge the lien and defending against Montalbano's opposition to his requested relief constitute "contesting the action" for purposes of the statute and that DeKlotz is therefore entitled to an award of attorney fees on appeal.

9

DeKlotz has also requested an award of attorney fees incurred before the trial court. The determination of the prevailing party and calculation of reasonable attorney fees are within the discretion of the trial court. *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 130 Idaho 255, 257, 939 P.2d 574, 576 (1997); *Burns Concrete, Inc. v. Teton County*, 172 Idaho 82, 88, 529 P.3d 747, 753 (2023). As such, it is not for this Court to determine the award of fees for proceedings in front of the lower court in the first instance. Because we remand this case to the district court with instructions to issue a declaratory judgment in DeKlotz's favor, DeKlotz may bring his motion for fees associated with the proceedings below on remand.

Finally, DeKlotz seeks an award of attorney fees and penalties against Montalbano pursuant to Idaho Code section 48-311, which provides for these awards when a party has willfully or knowingly violated the IPA. I.C. § 48-311(3). Given that we have already awarded fees on appeal to DeKlotz pursuant to section 48-305(3), we do not need to address his request for fees pursuant to section 48-311(3). On DeKlotz's request that we award a civil penalty against Montalbano, we decline to decide in the first instance whether Montalbano "willfully or knowingly" violated the IPA. That determination is more appropriately made by the factfinder. DeKlotz is free to request this relief before the trial court on remand.

Montalbano also asserts that he is entitled to fees on appeal pursuant to Idaho Appellate Rule 41. Montalbano is not a prevailing party and therefore is not entitled to an award of fees on appeal. Moreover, we have repeatedly held that while Rule 41 discusses the procedure for requesting attorney fees on appeal, it does not provide legal authority for granting fees. *Athay v. Stacey*, 142 Idaho 360, 371, 128 P.3d 897, 908 (2005).

## V. CONCLUSION

For the reasons discussed above, the decision of the district court is reversed.

Chief Justice BEVAN, Justices MOELLER and MEYER, and Pro Tem Justice SCHROEDER CONCUR.

10